LAKESIDE PLYWOOD & BUILDING MATERIALS, INC., Respondent, v. AETNA CASUALTY & SURETY COMPANY, Appellant.†

*No. 75–263. Argued January 3, 1977.—Decided February 1, 1977.*
(Also reported in 250 N. W. 2d 1.)

† Motion for rehearing denied, with costs, on March 15, 1977.

For the appellant there was a brief by *Kenneth M. Kenney* and *Wolfe, O'Leary, Kenney & Wolfe,* and oral argument by *Kenneth M. Kenney,* all of Milwaukee.

For the respondent there was a brief by *Griffin G. Dorschel* and *Axley, Brynelson, Herrick & Gehl,* and oral argument by *Mr. Dorschel,* all of Madison.

HANLEY, J.   Two issues are raised on appeal:

1. What is the maximum limit of liability under the policy?

2. Does this policy violate sec. 203.22, Stats., or is it void as contrary to public policy because it exacts a premium based on property values in excess of the maximum limit of coverage?

*Limit of Liability*

The first issue involves a problem solely of insurance contract interpretation. The rules of construction of insurance contracts have been summarized in *Garriguenc v. Love,* 67 Wis.2d 130, 134–35, 226 N.W.2d 414, 417 (1975):

"Contracts of insurance are controlled by the same principles of law that are applicable to other contracts. A policy of insurance like any other contract is to be construed so as to give effect to the intention of the parties. In the case of an insurance contract, the words are to be construed in accordance with the principle that the test is not what the insurer intended the words to mean but what a reasonable person in the position of an insured would have understood the words to mean. Whatever ambiguity exists in a contract of insurance is resolved in favor of the insured. This is a restatement

of the general rule that ambiguous contracts are to be construed most strongly against the maker or drafter. Words or phrases in a contract are ambiguous when they are reasonably or fairly susceptible to more than one construction. However, when the terms of a policy are plain on their face, the policy should not be rewritten by construction to bind the insurer to a risk it was unwilling to cover, and for which it was not paid. Litigants should not be able to resort to rules of construction for the purpose of modifying the contract or creating a new contract; and a court need not resort to either construction or case law to bolster its recognition of that plain meaning." (footnotes omitted).

The trial judge concluded that the contract here was at least ambiguous as to the insurer's limit of liability and thus adopted the insured's proffered construction. We find no ambiguity. It is possible to ascertain the intent of the parties by construing the contract as to what a reasonable person in the position of the insured would have understood the words to mean.

The fact sheet of the insurance policy in question states in paragraph 5:

"Insurance is provided with respect to those premises described above and with respect to those coverages and kinds of *property for which a specific limit of liability is shown,* subject to all of the terms of this policy including forms and endorsements made a part hereof." (emphasis added).

Directly below this paragraph is a section entitled "Section 1—Property Coverage." Within this section is a column entitled "Limit of Liability" under which the amount $15,000 is specified for personal property coverage for the location at which the fire took place, denoted Location No. 2. This $15,000 figure was increased to $90,000 by an endorsement issued about three months after the policy had become effective.

The endorsement which amends the policy to cover personal property on a reporting basis also refers to

limits of liability. Under "II. Limits of Liability" the policy states:

> "*Subject to the provisions with respect to the Company's percentage of the total of the limits of liability for all contributing insurance,* coverage under this endorsement applies to each of the following for which a limit of liability is specified." (emphasis added).

The emphasized dependent clause obviously applies to the word "coverage" in the above quoted policy term. This states the coverage is subject to the applicable percentage of the total limits for all contributing insurance. The percentage spoken of in this paragraph is specified on the face sheet of the policy to be 100 percent for the location of the fire, Location No. 2. This indicates it was intended that there be no other contributing insurance for this location. Directly below this paragraph on the reporting form endorsement is a "Schedule of Limits of Liability," which specifies $15,000 later increased to $90,000, as the limit of liability for all contributing insurance for Location No. 2.

Another obvious reference to the limits of liability is contained in the provisional amount clause on the reporting endorsement. That clause states:

> "A. Provisional Amount Clause. The amount of insurance provided for hereunder is provisional and is the amount on which the provisional premium is based, it being the intent of this insurance *to insure hereunder the total actual cash value of the property described herein subject to the Limits of Liability for all Contributing Insurance. Any loss in excess of the limits stated in this policy shall be borne by the insured, notwithstanding the requirement that premium is to be adjusted on the basis of full values reported.*" (emphasis added).

This clearly states the coverage under the policy is subject to the Limits of Liability for all Contributing Insurance. These limits, as pointed out above, are identified

on the same reporting endorsement, directly above the provisional amount clause.

Aetna argues that this $90,000 limit is the maximum liability of the company under its policy. Lakeside, on the other hand, contends, and the trial judge agreed, that this limit is only provisional and that the limit of coverage is the actual cash value of the loss, however large, minus certain penalties, if any, for underreporting monthly values at the location.

We are of the opinion that the above statements of "limits of liability" could only be construed by a reasonable person in the position of the insured as exactly what they are entitled—limits of liability under the contract.

Lakeside's characterization of the $90,000 limit as provisional evidently arises from the provisional amount clause, quoted above on the reporting endorsement. The first portion of that clause states, "The amount of insurance provided for hereunder is provisional and is the amount on which the provisional premium is based. . . ." We fail to see that the use of the term "provisional" applies to the limits of liability. We think this language refers to the figure stated on the same endorsement under "I. Basis of Premium" as the "Provisional Amount for Coverage B—Personal Property." That figure is $236,-250. That this is the correct interpretation is bolstered by the fact that the record shows the provisional premium is calculated as 75 percent of the established premium for the total amount of insurance provided. The amount of $236,250 is precisely 75 percent of $315,000, the sum of the original limits of liability for both the locations No. 1 ($300,000) and No. 2 ($15,000). Thus, the figure $236,250 is the provisional amount of coverage upon which the provisional premium is calculated and paid. Thus, although the amount of insurance provided may be termed provisional, this does not require that the stated limits of liability of the company are also provisional.

Even if the term "provisional" is applied to the stated limits of liability under the policy, that would not prevent those limits from constituting the maximum liability of the company. In *Ben-Hur Manufacturing Co. v. Firemen's Insurance Co.*, 18 Wis.2d 259, 118 N.W.2d 159 (1962), this court construed two reporting form fire policies virtually identical to that in this case. There the court found that the policies provided for a provisional amount of insurance and for a deposit premium of 75 percent of that provisional amount. The court stated several times that this provisional amount was the maximum amount of liability of the insurer under these policies. In that case the court termed the stated limits as the provisional amount of insurance, while in the instant case the provisional amount of insurance is 75 percent of the stated limits, the figure upon which the provisional premium is based.

The trial judge distinguished the policy in this case from those involved in the *Ben-Hur* case. He noted that the policies in that case contained a specific clause relating to limits of liability. That clause stated that the liability of the company is "in no event to exceed the . . . following limits." Both the trial judge and Lakeside state that the policy in this case does not contain language as direct as that in the *Ben-Hur* case. It does not necessarily follow however, that the language of the policy in question is not sufficiently plain.

The provisional amount clause, quoted above, states absolutely that:

". . . [a]ny loss in excess of the limits stated in this policy shall be borne by the insured, notwithstanding the requirement that premium is to be adjusted on the basis of full values reported."

The trial judge states that reliance upon the above statement as a basis that the stated limits are the absolute limits begs the question. This could be true if other

limits were stated in the policy, and this statement did not make clear what limits were referred to. However, we note that in the two most critical places in this policy, on the face sheet and on the reporting endorsement, references are made to specific limits of liability, and it is stated the coverage is subject to such limits. In both places, under headings "limits of liability," the figure $15,000, later increased to $90,000, is stated for location No. 2. This amount must be understood to be the limit of liability stated in the policy.

The language in the policy in the *Ben-Hur* case is only more definitive by the use of the phrase "in no event" and the words "the following limits," evidently referring directly to the stated figures. These specific differences are not a sufficient basis for distinguishing the two policies, where the one under consideration plainly states that the insured is responsible for any loss above the stated limits. This is the same as stating the insurer will not be liable under the policy above the stated limits.

Lakeside also contends that the object and purpose of reporting form insurance indicates that by this policy the parties contracted to insure Lakeside for the total cash value of its loss, however large, by damage to personal property. Lakeside states the purpose of reporting form insurance to be "to tailor the amount of insurance to the actual exposure of the insured in the keeping of his stock and inventory." This statement of purpose ignores the second, and most important, aspect of the object and purpose of reporting form insurance. In the *Ben-Hur* case, this court comprehensively considered reporting form insurance and quoted several statements of the purpose of this type of insurance. The most simple statement of this purpose is that reporting form insurance is designed to afford complete coverage to owners of fluctuating businesses and at the same time to avoid the

maintenance of insurance in excess of the value of the property insured.

That the object of eliminating the necessity of carrying excess coverage is the critical feature of reporting form insurance is exemplified by the following discussion of the practical situation which creates the need for this type of insurance.

"A merchant or manufacturer having an inventory of stock on hand, the value, character, or location of which varies considerably during the period of a year, is confronted with the problem of securing some type of indemnity contract which will protect him while his stock of goods is constantly changing and when no part of the property which might be destroyed or damaged may have been at the locations described at the time of the loss. If the merchant took out a specific or nonreporting policy, he could secure adequate coverage only by carrying insurance in the maximum amount of his fluctuating stock at each location and paying a premium for that amount of insurance even though during the greater part of the year he would be overinsured." *Ben-Hur Manufacturing Co. v. Firemen's Insurance Co.,* 18 Wis.2d at 268, 118 N.W.2d at 165.

Thus, reporting form insurance is intended especially to prevent the necessity of being overinsured in order to be fully covered. Because a policy has also as its purpose to fully cover the insured's risk, which is practically the purpose of any insurance, it does not follow that no absolute limits whatsoever may be imposed, and thus the purpose of reporting form insurance does not dictate that the policy under consideration must be construed so as to have no limits but the total value of the loss.

Lakeside also contends that since premiums are collected upon the actual value of the property, the actual value should be the basis for coverage. In regard to the construction of the present policy, this contention is not relevant where the policy does state limits of liability.

This contention is more properly considered in the remaining issue of whether maximum limits may be imposed at all under a reporting form policy.

We conclude that the policy plainly states that the limit of liability of the company is $90,000 for damage to property at Location No. 2 and the trial judge erred in concluding that the policy, by its terms, covered the total value of the loss.

*Legality of Maximum Limits*

Lakeside contends that if it is found that this policy sets a maximum limit of $90,000, such a limit is void as against public policy. Such a limitation, Lakeside contends, is in violation of sec. 203.22, Stats., which although effective at the time this policy became effective, has recently been repealed by Laws of 1975, ch. 375, sec. 10. That section of the statutes stated in part:

> "203.22 *Coinsurance clauses.* Except as otherwise provided by law, *no fire insurance company shall issue any policy in this state containing any provision limiting the amount to be paid in case of loss below the actual cash value of the property, if within the amount for which the premium paid,* unless, at the option of the insured, a reduced rate shall be given for the use of a coinsurance clause made a part of the policy. . . ." (emphasis added)

Lakeside further argues that such an insurance policy is contrary to the fundamental public policy that insurance companies shall not be allowed to charge for and collect a premium in excess of the coverage afforded.

These challenges to the reporting form type of insurance policy are leveled at the situation where, as in this case, the insured maintains and properly reports values of personal property in excess of the stated maximum limit in the policy, and the final adjusted premium is based upon an average value above the limit. Under

these circumstances may the insurer limit the liability below that upon which the adjusted premium is based?

In the instant case the stated maximum was $90,000. For several months the insured maintained and reported values in excess of this limit. After the policy was cancelled, it was determined by the insurer that the average cash value of the personal property at Location No. 2 amounted to $108,611, and the final adjusted premium was calculated upon this average, although it exceeded the $90,000 limit. Lakeside was charged an additional premium of $430 above the sum of the monthly provisional premiums paid. Later the insurance company claimed that any premium accepted which was based upon values in excess of the $90,000 limit was accepted only through inadvertence and oversight. Aetna offered to return this excess premium which amounts to $94.00.

First of all, it must be recognized that without exception the authorities and cases, including those in Wisconsin, acknowledge the validity of maximum limits of liability of the insurer in reporting form insurance, notwithstanding the fact the premium is based upon actual reported values. In *Ben-Hur Manufacturing Co. v. Firemen's Insurance Co., supra* at 269–70, 118 N.W.2d at 165, this court recognized the validity of these limits. *See also* Huebner, Black & Kline, *Property and Liability Insurance* 123 (1968) ; *Provisional or Monthly Reporting Insurance,* 13 A.L.R.2d 713, sec. 1, at 714 (1950) ; 43 Am. Jur.2d *Insurance* sec. 324, at 384 (1969).

Because such maximum limits are valid does not, however, answer the question presented here, where the insured reports value above those limits, premiums are accepted based upon these reported values above the maximum, and the insured suffers a loss above the maximum.

In this connection it is necessary to consider a particular statement of this court in the *Ben-Hur* case. In that case the court considered two policies of reporting form

insurance. Under one of the policies the insurer, American Church & Home Mutual Insurance Co., had originally placed a maximum limit of liability at $25,000. Monthly, however, for some unexplained reason the agent attached a conversion endorsement to the policy changing the maximum limit to the amount of cash value of goods reported for the previous month. The court noted that by doing so, the agent denied the insured the benefit of a reporting policy, because upon each conversion endorsement the policy would no longer technically cover for a fluctuating value above the cash value reported for that previous month. In fact, at the time of the loss suffered in that case, the maximum limit as imposed by the last conversion endorsement based upon the last monthly report of cash value was $15,690, while the loss amounted to $21,845.47.

The court stated that this procedure of repeatedly endorsing a new maximum limit based upon monthly reported values violated sec. 203.22, Stats., which provided no insurance company shall issue a policy containing any provision limiting the amount to be paid in case of loss below the actual cash value of the property if within the amount for which the premium is paid. 18 Wis.2d at 73, 118 N.W.2d at 167. Although in the instant case the court is not confronted with this unusual procedure of endorsement, the reason why this procedure was illegal is applicable in this case. This procedure was in violation of sec. 203.22, Stats., because the premium to be ultimately charged under the policy was based upon reported figures which at times were in excess of the stated maximum limit of liability. The problem was disposed of in *Ben-Hur* when the court, in the interest of justice and equity, disregarded the unusual procedure and treated the policy as stating the original $25,000 limit of liability. The above solution is not available here.

The strict application of the statement in the *Ben-Hur* case compels the conclusion that the policy here violated sec. 203.22, Stats. The final adjusted premium under the policy was based upon reported values in excess of the maximum liability in the policy. Even though Aetna stated it collected premiums based upon cash values in excess of the $90,000 limit only through inadvertence and offered to return the calculated excess premium, it must be noted that the policy itself provides that the premium shall be adjusted at the expiration of the policy based upon the average of the total values reported monthly, without limitation as to whether these reported values exceeded the stated maximum. The "Premium Adjustment Clause" found in the reporting endorsement states in relevant part:

"D. Premium Adjustment Clause. The premium named in this policy is provisional only. The actual premium consideration for the liability assumed hereunder shall be determined, at the expiration of this policy, by application of the following:

"1. An average of the total values reported at each location shall be made, and if the premium on such average values at the rate applying at each location (or in the case of locations acquired, the rate used shall be the rate that is applicable to each such location at the time the location was first reported) exceeds the provisional premium, the insured shall pay to the Company the additional premium for such excess; and, if such premium is less than the provisional premium, the Company shall refund to the insured any excess paid."

This adjustment clause does not limit the values reported, or even the average of the total values reported, upon which the final adjusted premium is based, to the $90,000 maximum limit of liability stated in the policy. Thus, this policy contains a provision which limits the amount to be paid in case of loss below the actual cash value of the property where that value is the basis for the calcula-

tion of the premium. Thus, according to the court's conclusion in *Ben-Hur*, the policy in question violated sec. 203.22, Stats., and of course, therefore, public policy as stated therein.

We conclude that under this policy the premium was paid for the amount in excess of the limit of coverage, and thus the limit was in violation of sec. 203.22, Stats. The insurer's offer to refund the excess premium cannot alter the operation of the policy's premium adjustment provision and, in fact, evidences an appreciation for the impropriety of the limit of liability in light of premiums paid based upon reported values in excess of this limit.

Since the limit of liability is found violative of sec. 203.22, Stats., it is not necessary to consider Lakeside's claim based upon general public policy.

*By the Court.*—Judgment affirmed.

DAY, J., took no part.