JOHN BATES AND VIRGINIA BATES, PLAINTIFFS-RESPONDENTS, v. VINCENT J. GAMBINO, DEFENDANT-APPELLANT.

Argued November 5, 1975—Decided February 15, 1977.

Mr. *John S. Triarsi* argued the cause for defendant-appellant (*Messrs. Pisano and Triarsi,* attorneys).

Mr. *John L. McGuire, Jr.* argued the cause for plaintiffs-respondents (*Messrs. Stein, Stein, Hughes and McGuire,* attorneys).

Mr. *Edward Krowen* filed a brief on behalf of *amicus curiae* Insurance Brokers Association of New Jersey (*Mr. Stephen C. Gilbert* on the brief).

PER CURIAM. Plaintiffs seek damages from defendant, a licensed insurance broker, charging him with breach of contract and negligence in processing an application for fire

and extended coverage insurance for their home. Coverage was applied for through the New Jersey Insurance Underwriting Association (N.J.I.U.A.). The application was in fact approved and the appropriate notice went to plaintiffs on June 28, 1970, twelve days after their home was destroyed by fire. At the time of the disaster there was no fire insurance covering the premises.

The trial judge, sitting without a jury, concluded there was "no breach of duty or contract" and found for defendant. The Appellate Division reversed and remanded the cause, instructing the trial judge to enter judgment in favor of plaintiffs and assess damages. 133 *N. J. Super.* 162 (1975). We granted certification to review that determination, 68 *N. J.* 166 (1975), and now affirm substantially for the reasons set forth in Judge Morgan's opinion for the Appellate Division.

Before this Court defendant argues that (1) "the existence of a reliance by plaintiffs on defendant" is not supported by the evidence, (2) the defendant was not negligent as a matter of law in the absence of "proof of a standard of professionalism" alleged to have been violated by defendant, and (3) plaintiffs were contributorily negligent by their "failure to procure insurance through another broker." The Appellate Division opinion's resolution of the last of these issues (133 *N. J. Super.* at 168) is quite sufficient and requires no further elaboration. As to the first and second grounds of appeal — no proof of plaintiffs' reliance on defendant, and plaintiffs' failure to establish a standard of professionalism — we augment the opinion below as follows, taking the points in inverse order.

## I

The specific negligence charged against defendant was his failure to have been aware of the immediate availability of coverage through a temporary binder on June 6, 1970, some ten days prior to the fire, and to have informed plaintiffs of the same. Defendant's position was that he could

not have known such coverage was available since he had not received from N.J.I.U.A. a copy of the rule (Regulation H. — Temporary Binder), promulgated about a year prior to the application in question by the Commissioner of Banking and Insurance, which provided for issuance of a temporary binder when an applicant was not notified of acceptance or rejection of his application for insurance within 25 days after its receipt.[1] Although the trial judge decided this issue adversely to defendant, he went on to hold that absent any indication by the broker that he was effecting or could effect insurance, and absent any reliance by plaintiffs to the contrary, liability could not attach to defendant.

The Appellate Division perceived this holding as erroneous and correctly identified the central issue in the case as whether defendant possessed the necessary skill and knowledge required of one who holds himself out to the public as an insurance broker when he admittedly did not know such temporary coverage as was provided by Regulation H was available. It said:

[D]efendant was under a duty to know the rules governing the Association's issuance of policies which the judge found were in defendant's possession at the time and to advise plaintiffs, whom he then knew were uninsured, that immediate coverage was available. His admitted failure to know and to advise did constitute a breach of duty even though plaintiffs, too, knew they were, at the time, uninsured. They thought they were uninsured because immediate coverage was unavailable. That information was inaccurate insofar as it pertained to the period of time following 25 days of inaction after the Association's receipt of plaintiffs' application.

[133 *N. J. Super.* at 167.]

and went on to hold that

[i]n these circumstances judgment in plaintiffs' favor for the damages suffered as a result of defendant's dereliction in duty should have been entered as a matter of law.

[*Id.*]

---

[1]The rule is set forth verbatim in the Appellate Division opinion, 133 *N. J. Super.* 162, 165 (1975).

That holding is not vulnerable on account of plaintiff's failure to establish by independent proof the professional standard which defendant broker allegedly violated. An early expression of the standard the law imposes upon insurance brokers is found in *Milliken v. Woodward,* 64 *N. J. L.* 444 (Sup. Ct. 1900). There the defendant brokers misrepresented to the insurance company the information given them by the plaintiffs. The company denied coverage and plaintiffs sued. Finding the defendants as fire insurance brokers had held themselves out as possessing sufficient skill requisite to the calling, the court stated that "if ordinary skill and diligence is [sic] not exercised, the neglect is actionable if it proximately results in loss or damage."

A broker is a specialist employed as a middleman to negotiate between the parties to a sale or other business contract, and they [sic] must exercise customary skill in the preparation of such documents as are requisite to effectuate the business which they have in hand.

[*Id.* at 448.]

The *Milliken* court itself established the standard without requiring plaintiffs to do so. Judge Conford recognized this in *Barton v. Marlow,* 47 *N. J. Super.* 255 (App. Div. 1957) (defendant broker negligently failed to keep plaintiffs insured for automobile damage coverage). "With respect to establishment of the defendant's duty, there was no necessity of proving a standard of professional care, within the *dictum* in *Milliken v. Woodward* * * *." *Id.* at 259–60.

Both *Milliken* and *Barton v. Marlow* involve what might be considered more flagrant negligence than the present defendant's. However, this Court in *Rider v. Lynch,* 42 *N. J.* 465 (1964), set forth a standard of care that seems almost tailored to the facts in this case.

One who holds himself out to the public as an insurance broker is required to have the degree of skill and knowledge requisite to the calling. When engaged by a member of the public to obtain insurance, the law holds him to the exercise of good faith and reason-

able skill, care and diligence in the execution of the commission. *He is expected to possess reasonable knowledge of the types of policies, their different terms, and the coverage available in the area in which his principal seeks to be protected.* If he neglects to procure the insurance or if the policy is void or materially deficient or does not provide the coverage he undertook to supply, because of his failure to exercise the requisite skill or diligence, he becomes liable to his principal for the loss sustained thereby.

[*Id.* at 476 (emphasis added).]

■ Our case law, then, has already established the professional, or more accurately, legal requirements of a broker.[2] Tested against the emphasized language above, which specified a general level of competence against which to measure a broker's conduct, defendant's failure to meet that level is readily apparent. In the circumstances before us the "standard of professionalism" was not required to be proven by plaintiffs. Defendant failed to meet the expectations of the law and his negligence was established.

■ It follows from this that plaintiffs were not obligated to present evidence of what a similarly situated competent broker in the community would have done under the circumstances. Where conduct falls below a certain standard, establishing the standard of competence generally expected of like practitioners becomes irrelevant.

---

[2]There is authority for the proposition that a plaintiff can establish a prima facie case of negligence against the broker if the conduct alleged falls within one of three situations.

An insurance broker may be held liable for his failure to exercise the requisite skill or diligence if he fails to issue the insurance policy he ha[d] promised to procure, *Marano v. Sabbio,* 26 *N. J. Super.* 201 (*App. Div.* 1953); if he assures the insured that he is covered whereas he is not, *Barton v. Marlow,* 47 *N. J. Super.* 255 (App. Div. 1957), or if he procures a policy which is materially deficient, *Rider v. Lynch, supra.* at p. 476.

[*Cox v. Santoro,* 98 *N. J. Super.* 360, 365 (App. Div. 1967).]

We do not read the case as limiting the establishing of a broker's liability to these three circumstances, and as is apparent from today's decision, we would not impose any such limitation.

What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not.

[*Texas & P. R. Co. v. Behymer*, 189 *U. S.* 468, 470, 23 *S. Ct.* 622, 623, 47 *L. Ed.* 905, 906 (1903) (Holmes, J.)]

That statement reflects a principle in the substantive law of negligence: there exists a fixed standard of conduct irrespective of the actual conduct of others. See generally 2 *Wigmore, Evidence* (3d Edition 1940), § 461 at 488–501. Thus our pertinent cases frame this legal standard in terms of requisite skill and diligence, see *Milliken v. Woodward, supra* at 448. Where the finding is made that defendant lacked the knowledge required by law and this ignorance resulted in damage to plaintiffs, inquiry into the level of competence expected of the industry is pointless. If the fixed legal standard is not met, negligence has been established. Because defendant's competence falls below the standard set by the law, its characterization as negligence is appropriate without recourse to any conceptualized standard of professional competence constructed by plaintiffs in this case.

■ None of what we have said thus far should be interpreted as a bar to testimony going to compliance with the standard set by law. Our point is that such testimony was not required on plaintiffs' case because defendant admitted he was unaware of Regulation H and of the temporary coverage provided thereby, and no issue was created as to compliance with the recognized standard. A different situation might have confronted the court had defendant sought to contest the issue by offering testimony of other brokers in the community to the effect that the regulation was so new or so insignificant or so plainly inapplicable as not to constitute a basis for a finding that the standard established by law had been violated. Had that been the defendant's strategy, such testimony would have been admissible, as, of course, would rebuttal testimony have been on plaintiffs' behalf. But allowing evidence of that sort is clearly distinguish-

able from a requirement that plaintiffs establish the profession's standard in the first instance by testimony from other members of the professional class. The latter bears on the creation of standard, while the former goes to whether that standard has been met.

A word of caution is in order here: today's ruling is limited to the liability of insurance brokers (except, of course, for the discussion of certain broad principles which are clearly of general applicability). There is no occasion presented by the case before us to determine whether other professionals come within the scope of our decision and we specifically refrain from expressing any view on that question. *Cf. State v. Nash,* 64 *N. J.* 464, 475 (1974).

## II

■ Defendant argues further that even if the Appellate Division assessment of his duty is correct, nevertheless he is not liable for damages in the absence of proof that plaintiffs were ready, willing and able to pay the estimated annual premium upon submission of the documents necessary to secure a temporary binder. He asserts as a defense plaintiffs' failure to show a proximate causal relation between defendant's dereliction and their loss. This "reliance" argument, although not couched in exactly that fashion, is premised on a history of the business dealings between the parties beginning in 1969. Defendant argues that in the course of those dealings plaintiffs repeatedly failed to pay their insurance premiums when due, and that on May 9, 1970, the date upon which the initial application was made to N. J. I. U. A., plaintiffs were without funds necessary to procure insurance.[3] However, when John Bates was told on May 9, 1970,

---

[3]The only evidence in this regard came from defendant, inasmuch as plaintiff John Bates died after the institution of suit but prior to trial. All dealings between the parties were conducted on plaintiffs' behalf by Mr. Bates, and plaintiff Virginia Bates' hearsay testimony with respect thereto was necessarily circumscribed. See *Evid. R.* 63(32).

the date he applied for insurance through N. J. I. U. A., that it might take "a month or more" before his property was covered, he replied "That's good. By that time I'll have the money." This clearly suggests that sometime around June 9 he would be in a position to pay the premium. As indicated, a temporary binder was available three days before that date (and *a fortiori* on and after June 9), and the fire occurred a week after that date.

The Appellate Division dealt with defendant's contention on this point as follows:

Defendant argues that plaintiffs would have been unable to pay for this coverage at that time since defendant was informed that they would first have the money at the end of the anticipated waiting period.

This contention lacks merit. Plaintiffs ordered the insurance and it cannot be assumed, in light of their expressed desire for coverage, that they were in no position to make payment for it. Had defendant relied upon their representation of temporary poverty in refraining from advising them of immediate coverage, a different question would have been presented. Here, his failure to advise was caused by his own admitted ignorance of the rules which could have afforded plaintiffs immediate coverage.

[133 *N. J. Super.* at 167–68.]

This eminently sound disposition is entirely justified by the state of the evidence before us, clearly demonstrating that plaintiffs were determined to protect their home. *Cf. Harris v. Perl,* 41 *N. J.* 455, 465 (1964).

### III

The judgment of the Appellate Division is affirmed. The cause is remanded to the Law Division for the determination there of damages and the entry of judgment accordingly.

*For affirmance and remandment*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD—7.

*For reversal*—None.