**TRIPP, INC., Appellant,**

v.

**KENNETH A. MURRAY INSURANCE, INC., Appellee.**

**No. 3743.**

Supreme Court of Alaska.

Oct. 12, 1979.

---

James A. Parrish, Parrish Law Office, Fairbanks, for appellant.

Stephen D. Cramer, Merdes, Schaible, Staley and DeLisio, Inc., Fairbanks, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

## OPINION

RABINOWITZ, Chief Justice.

The central question presented in this appeal is whether the superior court improperly denied Tripp, Inc.'s motions for summary judgment, directed verdict, and judgment notwithstanding the verdict. These motions all were founded on the same ground, namely, that as a matter of law Murray Insurance was negligent in failing to advise the insured, Tripp, Inc., concerning the method of calculation of premiums under its insurance policy.

Tripp, Inc. was a business in Fairbanks which was involved in the sale, service, rental and lease of office furniture, equipment and supplies. A fire occurred on the premises of Tripp, Inc.'s business on the night of February 5, 1975, which resulted in a complete loss of inventory valued in excess of $230,000. At the time of the fire, Tripp, Inc. was insured through Murray Insurance, an independent broker, by a policy purchased from the Home Insurance Company. The insurance policy provided for recovery from loss by fire on the full inventory contained on the premises of the Tripp, Inc. business up to the policy maximum of $125,000. Thus, at the time of the fire, Tripp, Inc. was substantially underinsured.

Tripp, Inc. subsequently brought an action alleging negligence by Murray Insurance in failing to maintain adequate fire insurance coverage on the Tripp, Inc. property which resulted in Tripp, Inc. sustaining losses far in excess of the indemnification provided in the insurance policy. The original theory of liability alleged was that pursuant to several telephone conversations and a meeting between Wilmer Preising, the owner of Tripp, Inc., and Murray Insurance several months prior to the fire, Preising requested, and Murray Insurance agreed, to obtain additional coverage for

the increasing inventories of Tripp, Inc. to a $300,000 maximum policy coverage. Tripp, Inc. later alleged alternatively in its motion for summary judgment, that even if the factual issue of whether Preising ever actually requested the increase in coverage was decided against Tripp, Inc., Murray Insurance should be held liable as a matter of law because it failed to inform Tripp, Inc. that under the terms of the insurance policy Tripp, Inc. was required to pay premium dollars based on the amount of insurance shown on the monthly inventory value report forms, even though the actual amounts of inventory reported exceeded the maximum coverage allowed under the policy. Tripp, Inc. asserted that if it had known it was required to pay the same premium whether or not it increased its maximum coverage, it certainly would have taken steps to secure the extra coverage needed to protect its increasing inventory levels.

The superior court denied the motion for summary judgment on the ground that there were unresolved factual issues in the action, and the case then proceeded to trial by jury. At the close of Murray Insurance's case, Tripp, Inc. moved for directed verdict on the issue of liability based on the same legal theory as was set forth in the motion for summary judgment. The superior court denied the motion for directed verdict. After the jury found in favor of Murray Insurance on the liability issue and judgment was entered on its behalf, Tripp, Inc. moved for judgment notwithstanding

the verdict. This motion was also denied by the superior court and the appeal followed.

The claim of error in the denial of the motion for summary judgment, the motion for directed verdict, and the motion for judgment notwithstanding the verdict in this case can be resolved by reference to the standard of review for denials of the latter two motions, since it is established that a court should not grant summary judgment where it could not properly direct a verdict or enter a judgment notwithstanding the verdict.[1] The role of this court in reviewing the denial of motions for a directed verdict and for a judgment notwithstanding the verdict is "to determine whether the evidence, when viewed in the light most favorable to the nonmoving party, is such that reasonable men could not differ in their judgment."[2] Thus, the primary inquiry here is whether the evidence is such that, according all favorable inferences to Murray Insurance, reasonable persons nevertheless could not differ in their judgment as to the liability of Murray Insurance for failing to inform Preising concerning the details of the premium structure in Tripp, Inc.'s policy of insurance.[3]

Tripp, Inc. argued in its motions below and in its appeal to this court that, based on the undisputed facts in this case, Murray Insurance should be found to be negligent as a matter of law for failing adequately to advise Tripp, Inc. as to the nature of the premium structure.[4] The significance of the allegedly omitted advice is better appre-

1. 6 Moore's Federal Practice ¶ 56.04[2], at 56–76 (2d ed. 1976 and Supp.1978–79). However, the denial of a motion for summary judgment in no way rules out the possibility of a subsequent directed verdict or judgment notwithstanding the verdict. See Gross v. Southern Ry. Co., 446 F.2d 1057 (5th Cir. 1971); Armco Steel Corp. v. Realty Investment Co.., 273 F.2d 483 (8th Cir. 1960).

2. Holiday Inns of America v. Peck, 520 P.2d 87, 92 (Alaska 1974). See also City of Whittier v. Whittier Fuel & Marine Corp., 577 P.2d 216 (Alaska 1978); Bachner v. Rich, 554 P.2d 430 (Alaska 1976); Teller v. Anchorage Asphalt Paving Co., 545 P.2d 177 (Alaska 1976).

3. "The test is objective; and, if there is room for diversity of opinion among reasonable people, the question is one for the jury." City of Whittier v. Whittier Fuel & Marine Corp., 577 P.2d 216, 220 (Alaska 1978).

4. Tripp, Inc. does not deny that there were numerous issues of disputed fact regarding the alternative theory of liability originally alleged in the complaint. As discussed earlier, that theory was that Murray Insurance was negligent in failing to secure increased coverage for Tripp, Inc. after Tripp, Inc. specifically requested the increase. Murray Insurance denied that such a request had ever been made.

ciated against a detailed explanation of the method of calculation of premiums.

The type of policy employed for Tripp, Inc.'s inventory coverage was a standard stock-reporting form policy.[5] The premiums for this type of policy are calculated in a two-stage process. First, before the start of the period covered by the insurance policy, an advance deposit or "down-payment" is submitted by the insured. The deposit is calculated by applying a set insurance rate to 75% of the coverage limit which has been chosen by the insured at the inception of the policy. The insured then submits monthly inventory value report forms during the period of the policy which report the actual fluctuating amount of inventory on hand during each month. At the end of the policy period, the second stage of premium calculation occurs. At that time a computation is made based on an average of the actual amounts of inventory reported each month on the forms submitted by the insured. The final premium is calculated by applying the insurance rate to the actual value of inventory averaged over the period of coverage. If the average inventory on hand turns out to be greater that 75% of the coverage limit, the insured is required to pay the difference in premiums between the rate applied to the actual inventory and the rate calculated at the beginning of the policy period. If the actual average monthly inventory is less than 75% of the coverage limit, the insured receives a refund from the insurance company at the end of the policy period. The obvious advantage to the insured of this type of premium calculation is that, in the end, the insured pays for coverage of only the actual inventory that was insured by the policy. There is a corresponding disadvantage to the premium structure. Since the premium is cal-culated on the average actual inventory value, which may exceed the coverage limit at times, the insured in such situations ends up paying a premium on insurance coverage which it does not receive under the set limits of the policy. Thus, there is a considerable incentive for an insured to increase its coverage whenever the actual inventory value begins to rise above the coverage limit, because the insured has to pay premiums on that inventory value, whether or not it is covered under the policy.

Although there is some dispute in the record as to whether an increase in coverage limits requires an outlay by the insured of an additional advance deposit, Murray Insurance's expert insurance broker testified at trial that the rules of the "insurance rating office" require a deposit upon an increase in insurance coverage limits. However, the practice of charging an additional advance premium when the limits are increased would have no effect whatsoever on the final premium to be paid, since the final premium is still based on the actual inventory reported.

Tripp, Inc. contends that the record is undisputed that Preising did not understand that if he submitted actual inventory values in excess of the policy limits he would be charged a premium based on the total values submitted, even though they were in excess of the policy coverage limits. Under these circumstances, Tripp, Inc. further argues that an insurance broker has a duty as a matter of law to inform the insured as to the method of calculating premiums when, as in this case, the evidence is also undisputed that the broker is aware that the insured is repeatedly exceeding its coverage limits on the monthly inventory value report forms.[6] Tripp, Inc. asserts that as a result of the negligent

---

5. *See generally Lakeside Plywood and Building Materials, Inc. v. Aetna Casualty & Surety Co.,* 75 Wis.2d 484, 250 N.W.2d 1 (1977).

6. Insurance agents and brokers have been held to be liable to the insured on the ground of inadequacy of property insurance procured in a variety of situations. *See, e. g., McAlvain v.*

*General Ins. Co.,* 97 Idaho 777, 780, 554 P.2d 955, 958 (1976), which stated:

A person in the business of selling insurance holds himself out to the public as being experienced and knowledgeable in this complicated and specialized field. The interest of the state that competent persons become insurance agents is demonstrated by the re-

breach of its duty to inform in the present case, Murray Insurance is liable as a matter of law for the damages incurred by Tripp, Inc. as a result of the underinsurance of its inventory at the time of the fire.[7]

Our study of the record has led us to the conclusion that the superior court did not err in denying Tripp, Inc.'s motions for summary judgment, directed verdict and judgment notwithstanding the verdict, because we are persuaded that a factual dispute existed with regard to the actual knowledge of the owner of Tripp, Inc., Wilmer Preising, regarding the premium structure of Tripp, Inc.'s stock-reporting insurance policy. Knowledge of the method of calculation of the premium is important because if the triers of fact were convinced the Preising had actual knowledge of the method of calculating premiums, then reasonable person might differ as to whether Murray Insurance's actions could still be deemed to have been the proximate cause of the damage in such a case.[8] Moreover, the jury could have concluded that Murray

---

quirement that they be licensed by the state, pass an examination administered by the state, and meet certain qualifications. An insurance agent performs a personal service for his client, in advising him about the kinds and extent of desired coverage and in choosing the appropriate insurance contract for the insured. Ordinarily, an insured will look to his insurance agent, relying, not unreasonably, on his expertise in placing his insurance problems in the agent's hands. When an insurance agent performs his services negligently, to the insured's injury, he should be held liable for that negligence just as would an attorney, architect, engineer, physician or any other professional who negligently performs personal services. [citations omitted] *See generally* Annot., 72 A.L.R.3d 747 (1976).

7. Tripp, Inc. cites two cases in support of its contention that an insurance broker may be found to be negligent in giving or failing to give appropriate advice to the insured as a matter of law. *Bates v. Gambino*, 72 N.J. 219, 370 A.2d 10 (1977), reversed the trial court and entered summary judgment against procedures which protected an applicant when an insurance application was submitted to the company for approval. If the company did not act on the application within twenty-five days, the applicant had a right to a temporary binder. The broker failed to procure this protection for the applicant and was consequently held liable for damages incurred by the applicant because of his lack of temporary coverage. The *Bates* court said:

Our case law, then, has already established the professional, or more accurately, legal requirements of a broker. Tested against [these prior cases], which specified a general level of competence against which to measure a broker's conduct, defendant's failure to meet that level is readily apparent. In the circumstances before us the 'standard of professionalism' was not required to be proven by plaintiffs. Defendant failed to meet the expectations of the law and his negligence was established.

*Id.*, 370 A.2d at 13–14. In *National Boulevard Bank v. Brokerage Resources, Inc.*, 42 Ill. App.3d 940, 1 Ill.Dec. 706, 356 N.E.2d 988 (1976), the court held that the broker's testimony that he did not inquire as to whether the premises to be insured were going to be vacant for more than sixty days when the insurance policy excepted such property from coverage constituted negligence as a matter of law.

We have previously held that a claim for relief based on negligence may be maintained against an insurance agent acting within the scope of his authority. *Austin v. Fulton Ins. Co.*, 498 P.2d 702 (Alaska 1972). However, we have also expressed a reluctance to remove the issue of whether the duty of due care has been breached from the finder of fact. *State v. Guinn*, 555 P.2d 530, 534 (Alaska 1976); *see also Wilson v. Sibert*, 535 P.2d 1034 (Alaska 1975); *Lee v. State*, 490 P.2d 1206 (Alaska 1974).

8. Proximate cause is one of the traditional elements necessary for a negligence cause of action. W. Prosser, Handbook of the Law of Torts § 30, at 143 (4th ed. 1971) sets out the four elements of a negligence cause of action:

1. A duty, or obligation, recognized by the law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks.

2. A failure on his part to conform to the standard required. These two elements go to make up what the courts usually have called negligence; but the term quite frequently is applied to the second alone. Thus it may be said that the defendant was negligent, but is not liable because he was under no duty to the plaintiff not to be.

3. A reasonable close causal connection between the conduct and the resulting injury. This is what is commonly known as "legal cause," or "proximate cause."

4. Actual loss or damage resulting to the interests of another. [footnotes omitted]

The jury in this case was instructed on proximate cause as follows:

Damage is proximately caused by an act or failure to act whenever it appears from the

Insurance knew Preising had such knowledge, thus relieving it of its duty to advise him of the nature of the premium structure.[9]

■ In our view, the following facts in the record support an inference that Wilmer Preising had actual knowledge that Tripp, Inc. was paying insurance premiums based on the actual value of the inventory reported regardless of the maximum limits of the policy of insurance and of the fact that recovery could not be obtained in excess of the maximum limits of the policy. Some of them also show that he demonstrated this knowledge to the defendant at the time he purchased insurance. First, the operative provisions of the policy indicate the method of calculating premiums.[10] Second, the reverse side of the monthly

evidence in the case that the act or omission played a substantial part in bringing about or actually causing the damage; and that the damage was either a direct result or a reasonably probable consequence of the act or omission.

This does not mean that the law seeks and recognizes only one proximate cause of the damage, consisting of only one factor, one act, one element or one set of circumstances, or the conduct of one one person. To the contrary, two or more factors, acts, omissions, or elements, or the conduct of two or more persons may work concurrently as proximate causes of damage, and in such a case, each of the participating acts, factors, omissions, conducts, or circumstances is regarded in law as a proximate cause. To give rise to liability, however, any such proximate cause must have consisted of negligent conduct.

9. The extent of Preising's familiarity with the inventory value reporting type of insurance policy would affect the legal standard to which Murray Insurance is held regarding its duty to sufficiently inform Tripp, Inc. of the premium structure. Thus, a sophisticated business person with significant experience with inventory value reporting types of insurance policies could be held to have been satisfactorily informed of the terms of the policy for purposes of avoiding liability of the broker as a matter of law in circumstances where a less knowledgeable person could obtain a summary judgment on grounds of negligence.

In the case at bar the superior court gave the following instruction relating to Murray Insurance's duties:

You are instructed that the defendant Kenneth A. Murray Insurance, Inc., was acting as broker for Tripp, Inc., its customer. You are further instructed that a broker-customer relationship existed between Kenneth A. Murray Insurance, Inc., and Tripp, Inc. An insurance broker owes his customer the following duties:

a. A duty to his customer to exercise reasonable skill, care and diligence in procuring and servicing insurance policies which he has procured for his customer;

b. A duty to exercise reasonable care to keep the customer fully informed as to the status of the customer's insurance in light of deficiencies which appear in the customer's insurance and other available coverage;

c. A duty to exercise reasonable care to advise the customer concerning the cost and benefits of available coverage to the end that the customer can make intelligent decisions regarding what insurance to purchase.

If the insurance broker fails to perform any of the above duties, that failure is negligence. This instruction has not been made a point of appeal in this proceeding.

10. The insurance policy provides, in relevant part:

A. PROVISIONAL AMOUNT: The amount of insurance provided under Coverage B(1) [Business Personal Property] or Coverages B(1) and B(2) [Improvements and Betterments] if written for one amount, of this policy is provisional and is the amount on which the Provisional Premium is based, it being the intent of this insurance to insure hereunder the total actual cash value of the property described in Coverage B(1), or Coverages B(1) and B(2) if written for one amount, to an amount not exceeding the amount(s) specified in the Declarations. Any loss in excess of the amounts stated in this policy shall be borne by the Insured, *notwithstanding the requirement that premium is to be adjusted on the basis of full values reported.* [emphasis added]

. . . . .

D. ADJUSTMENT OF PREMIUM: The premium named in this policy is provisional only. The actual premium consideration for the liability assumed hereunder shall be determined at the expiration or cancellation of this policy by the following method:

An average of the total values reported as respects property covered under Coverage B(1), or Coverages B(1) and B(2) if written for one amount and Item (3) as specified in Declarations page 2c, during the period for which the adjustment is being made shall be calculated, and if the premium on such average values at the rate applying to this policy during such period exceeds the provisional

inventory value report form explains that the policy limit is the maximum amount that can be recovered, even though the actual inventory values which are reported by the insured are greater than the agreed upon policy limits.[11] Third, at the time Preising purchased the insurance policy for Tripp, Inc. through Murray Insurance, he was familiar with the monthly inventory value report forms, which were similar to ones he had been using for his previous insurance policy with a different company. Ken Murray, Jr. testified that at the time of purchase, Preising and he had a conversation pertaining to Preising's familiarity with the terms of monthly inventory reporting policies. Murray testified that a fair summary of the conversation was that Preising indicated that he was familiar with them. Preising indicated that at the initial conversation it was discussed, and he therefore was aware, that there was no overall premium penalty for setting a limit which was too high. Thus he testified concerning the meeting:

A. I was told 'yes, if you ever want to go over the 125,000' Ken said 'make sure you get with us.'

Q. Okay. Was that specifically mentioned here with Murray or was that a provision that you were familiar with before you . . ..

A. It was said at the time of purchase.

Q. By Ken Murray?

A. Yes, because we were initially discussing how much should we set the limit. And then they said, 'It doesn't cost you any more if you're under.' So my question always was, 'Why not set it at a million dollars if it doesn't cost you any more,' . . ..

Fourth, Preising testified at trial to certain relevant facts. When he allegedly requested Murray Insurance to increase the policy limit of Tripp, Inc.'s inventory value insurance (a fact in dispute),[12] he stated, "Well, make it the 300 [$300,000 policy limit]. *It doesn't cost any more.*" (emphasis added) Further, on cross-examination Preising was asked and answered the following questions:

Q. Were you familiar with the fact that on the reporting form insurance, the premium was adjusted at the end of the year?

A. Yes.

Q. And was that based upon the inventory that was reported for that—for that entire year?

premium, the Insured shall pay to the Insurer an additional premium for such excess; and, if such premium is less than the provisional premium, the Insurer shall refund to the Insured any excess paid.

11. The reverse side of the inventory value report form contains, in part, the following information:

5. LIMITS OF LIABILITY: Your coverage in no event exceeds the limits of liability specified in the policy. But in order to recover up to those limits you must report full values even though they exceed the limits. The responsibility for obtaining full insurance protection is yours. If the specified limits are inadequate to give you such protection, your agent or broker may be able to secure for you an increase in the limits or specific insurance, if you request such increased protection.

6. WHO SHOULD REPORT: The report should be made by you and signed by one of your responsible officials and not by your agent or broker. No agent or broker is authorized to relieve you of the responsibility for reporting values to the Company or to assume it for you. No notice respecting delinquency or deficiency in reporting is required, and no such notice shall relieve you of the consequences of your failure to comply with the reporting requirements. Acceptance of late reports will not remedy any insurance deficiency which results from your failure to report on time. The Company may examine your records. Knowledge acquired through such examination is not a substitute for the reports you are required to file.

12. As indicated in note 4 *supra*, Tripp, Inc. alleged alternative claims of negligence, one of which was that Murray Insurance was negligent in failing to obtain increased coverage for Tripp, Inc. after being specifically requested by Preising to do so. The case went to the jury on this theory of negligence as well as the claim of negligence which was grounded in Murray Insurance's purported failure to advise Tripp, Inc. of the nature of the premium structure which applied to the stock-reporting policy.

A. Yes.

Q. All right. Were you familiar with the fact that if you set your inventory limits high and your—at the end of the year adjustment time, your averages didn't—were less than the limit, that you wouldn't be charged for the additional?

A. Yes.

Q. And when did you first learn of that?

A. I was always under the impression it's what I used on an average.

Q. *In other words, you'd be charged at the end at the adjustment time for what you used?*

A. Yes.

Q. *Okay. Regardless of what—of what the limit was?*

A. *Uh-huh.*[13] [emphasis added]

Fifth, officers of Murray Insurance testified that Preising gave them a reason for not increasing the policy limits, namely, that Tripp, Inc.'s inventory was coming in and going out quite rapidly and that it often would not be in the warehouse longer than overnight. Sixth, there was testimony that while insured by a different company under a similar inventory value reporting type of policy, Preising successfully initiated and obtained an increase in coverage limits.[14]

On the basis of the foregoing, we have concluded that there was sufficient evidence in the record indicating that Preising knew how the premiums were calculated so that reasonable jurors could have differed on the question of Preising's actual knowledge, and thus differed as to whether or not Murray Insurance's purported negligence in failing to advise Tripp, Inc. of the premium calculation method was the proximate cause of the damages which resulted in this case.[15]

In its remaining specification of error, Tripp, Inc. contends that the superior court's refusal to give the whole of a requested instruction was an abuse of discretion. The instruction which was proposed by Tripp, Inc. read:

The jury is instructed that it is not necessary to support a finding of negligence that every act and omission charged against a person be proved. If by a preponderance of evidence it has been proved that any negligent conduct on the part of a party was a proximate cause of the injury and/or damage in question, such proof is sufficient to support findings against that party on those particular issues.

Each juror need not agree that the same conduct was negligent and a proximate cause of the injury and/or damage. If the required number of jurors can agree that some negligent conduct on the part of a party has been proven by a preponderance of the evidence to have proximately caused injury and/or damage to the other party, such proof is sufficient to support findings against that party on those issues.

---

13. Preising also testified that he was aware that the maximum he could recover was the limit of the insurance policy. However, Preising testified on redirect examination in answer to the following question:

Q. Prior to this lawsuit did you know that if you reported values in excess of the limit that you would have been charged a premium based upon that excess inventory?
A. No, I didn't.

14. The deposition of Murray Insurance's expert insurance broker, Keith Thomas, stated that Thomas was familiar with the insurance policy Preising had had with the other insurance company and that Preising "appeared to be quite familiar with reporting form coverage, having used this type of coverage for some years in the past."

15. Tripp, Inc.'s primary defense to the issue of actual knowledge is that no reasonable person would not have increased coverage knowing that he would be paying the same premiums under the higher policy limit. Though this argument is logically persuasive, there was testimony to the contrary at trial by Keith Thomas that the insured may have reasons not to increase insurance coverage; for example, if the increased inventory is only a temporary condition. It also appears that an increase in coverage might require an additional outlay of an advance deposit by the insured. *See* discussion at 1364 *supra.*

While the superior court declined to give Tripp, Inc.'s entire proposed instruction, it did give the first paragraph, essentially unchanged, to the jury. Jury Instruction No. 10, given by the superior court, stated:

The jury is instructed that it is not necessary to support a finding of negligence that every act and omission charged against a person be proved. If by a preponderance of the evidence it has been proved that any negligent conduct on the part of a party was a proximate cause of the damage in question, such proof is sufficient to support findings against that party on those particular issues.

Tripp, Inc. takes the position that the superior court misunderstood the law as to the necessity for agreement by the jurors regarding which particular negligent act by Murray Insurance proximately caused the damages, and thus the superior court improperly declined to give the second paragraph of the requested instruction.

Tripp, Inc., has not cited any decisional authority in support of its position. Moreover, the superior court is accorded broad discretion regarding its instructions to the jury on alternative theories of negligence. The case law in other jurisdictions establishes that even the first paragraph of Tripp, Inc.'s proposed instruction, which stated that the plaintiff need not prove each and every alleged act of negligence in order to recover, may be omitted in the discretion of the trial court.[16] The rule seems to be that if the general definition of negligence contained in the instructions adequately informs the jury as to the law, the principle of law included in the more specific instruction is deemed substantially covered by the instructions defining negligence generally.[17] Here there was no objection to any of the other instructions pertaining to negligence, and they appear to accurately reflect the law with regard to liability for negligence. Thus, we conclude that the superior court did not abuse its discretion in failing to give the entire instruction proposed by Tripp, Inc.[18]

Affirmed.

16. *Davenport v. Little*, 132 Ga.App. 391, 208 S.E.2d 179 (1974); *Nordin v. Atchison, Topeka & Santa Fe Ry. Co.*, 202 Cal.App.2d 739, 21 Cal.Rptr. 173 (1962); *see also* BAJI § 3.19, at 63 (6th ed. 1977), which recommends that "no instruction be given that 'proof of every act or omission of alleged negligence is not necessary.'" There was no objection by Murray Insurance to the giving of the first paragraph of the proposed instruction, however.

17. *See Ferrell v. Baxter*, 484 P.2d 250 (Alaska 1971); *Sparks v. Bledsaw,* 239 Cal.App.2d 931, 49 Cal.Rptr. 246 (1966) (there is no abuse of discretion in refusing to give an instruction on a subject which is adequately covered by another instruction).

18. We note that, in the context of the present case, we are not called upon to decide whether, if the requested paragraph of plaintiff's proposed instruction had been given, it would have constituted reversible error (assuming Tripp, Inc. had prevailed). Cases arising in the criminal context take differing approaches regarding the necessity for jury unanimity on alternative theories of ultimate facts leading to criminal liability. *See, e. g., United States v. Gipson,* 553 F.2d 453 (5th Cir. 1977); *State v. Arndt,* 87 Wash.2d 374, 553 P.2d 1328 (1976). *See generally Bendle v. State,* 583 P.2d 840 (Alaska 1978); *Drahosh v. State,* 442 P.2d 44 (Alaska 1968). One problem which would arise from the giving of such an instruction would be its effect on the use of special verdicts in complex cases where several theories of negligence are alleged. 2 E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions* § 74.14, at 643 (3d ed. 1977 and Supp.1978), notes that "[a]lthough the issue has never arisen in a reported federal case, it has been assumed that unanimity is required for answers to special questions." We defer ruling on this difficult question until an appropriate case is presented for our resolution.