554 P.2d 955

**Douglas McALVAIN, Plaintiff-Respondent,**

**v.**

**GENERAL INSURANCE COMPANY OF AMERICA, a corporation, Defendant,**

**and**

**Adams County Abstract Company, a corporation, Defendant-Appellant.**

**No. 11588.**

Supreme Court of Idaho.

Sept. 27, 1976.

Donald W. Lojek, of Moffatt, Thomas, Barrett & Blanton, Boise, for defendant-appellant.

George A. Greenfield, of McClenahan & Greenfield, Boise, James B. Donart, Ketchum, for plaintiff-respondent.

BAKES, Justice.

Adams County Abstract Company, a corporation, appeals from a judgment on a jury verdict finding it liable for its negligent failure to issue sufficient insurance to plaintiff Douglas McAlvain on the inventory at his retail store, the Council Electric Furniture and Appliance Store. It contends that it owed no duty to McAlvain which would subject it to liability in tort for its negligence. We affirm the judgment of the trial court.

In the summer of 1969, McAlvain purchased Council Electric as an ongoing business, entering into a real estate contract with the seller which required that the property involved be adequately insured. The purchase price was contingent on the results of a final inventory of the business which was to be taken in July, 1969; the inventory when completed disclosed that at the time of the sale the store contained $45,000.00 in inventory.

The Adams County Abstract Company acted as real estate agent in this transaction, through its president and principal real estate officer, Ferd Muller. Adams County Abstract Company is a small, closely-held corporation of which Muller is controlling shareholder, dealing in real estate and insurance business in the Council area. It is the local agent for General Insurance Company of America (SAFECO), which held the existing contract for insurance on the inventory at Council Electric at the time of sale. Thus, Adams County Abstract handled both the real estate transfer and the transfer of insurance to the plaintiff McAlvain in 1969. The existing policy had a $30,000.00 coverage on inventory. Shortly after taking over the business, McAlvain met with the principal insurance agent for Adams County Abstract, Rosemary Kilborn, to negotiate a package insurance plan for Council Electric. He requested sufficient insurance to fully cover the business, including the inventory. Although the results of the final inventory had been delivered to Adams County Abstract so that Muller could complete the paper work on the real estate transfer, thus giving Adams County Abstract the information that the inventory at Council Electric was valued at $45,000.00 at that time, the three year insurance policy written by Kilborn covered inventory only to the extent of $30,000.00.

In November, 1970, during the second year of the policy, McAlvain was in the Adams County Abstract office on an unrelated matter when he first became aware that his inventory was underinsured. He

testified that he told Muller that the present level was grossly inadequate and that his inventory insurance should be around $50,000.00. Adams County Abstract did not immediately increase McAlvain's inventory coverage, and the reason for its failure to do so was a matter of dispute in this lawsuit. McAlvain claimed that as of that date Adams County Abstract had committed itself by an oral binder to insure his inventory to $50,000.00. Adams County Abstract countered that there was no agreement at that time, but that McAlvain would return at a later date to order increased coverage.

On December 10, 1970, the Council Electric store was gutted by fire, and the inventory almost totally destroyed. An inventory taken shortly thereafter based on invoices and the discernible remains of the furniture and appliances, etc., was $43,625.-00, but as of the night of the fire the inventory at Council Electric was only insured to $30,000.00.

McAlvain sued both Adams County Abstract and the General Insurance Company on the following alternative theories. In his third cause of action McAlvain claimed that Adams County Abstract Company had been negligent in its initial failure, in August, 1969, to provide the plaintiff with adequate insurance coverage of the inventory at Council Electric and he claimed as damages the difference between $43,625.00 and $30,000.00, less $4,071.00 salvage (or $9,554.00). In his fourth cause of action, against General Insurance Company, he claimed that the conversation with Muller in early November, 1970, constituted an oral binder contract to insure for $50,000.-00 which would be binding on General Insurance Company.

The jury found in favor of the plaintiff and against Adams County Abstract Company on McAlvain's third cause of action that the Adams County Abstract Company had acted negligently in failing to initially issue sufficient insurance to cover the full inventory of the Council Electric store. However, the jury found against the plain-

tiff on his claim against General Insurance Company that an oral binder to insure the inventory to $50,000.00 resulted from the conversation between McAlvain and Muller in November of 1970.

Adams County Abstract Company contends that it cannot be held liable in tort for its failure to issue sufficient insurance to McAlvain because the only duties it owed to McAlvain were contractual. It argues that the mere failure to carry out contractual duties does not give rise to an action in tort, *Taylor v. Herbold*, 94 Idaho 133, 483 P.2d 664 (1971), and that under our holding in *Benner v. Farm Bureau Mutual Ins. Co. of Idaho, Inc.*, 96 Idaho 311, 528 P.2d 193 (1974), McAlvain cannot obtain a judgment against the insurance agent. We disagree.

The plaintiff urged two alternative theories of liability to the jury, each of which centered upon a separate incident in his dealings with Adams County Abstract Company. The third cause of action was based upon his claim against the insurance agency for its alleged negligence in 1969 when his insurance policy was originally written. The fourth cause of action was his claim that the agency had bound the insurer, General Insurance Company, by an oral contract to increase his insurance based upon McAlvain's conversations with Muller in November, 1970. The plaintiff phrased these claims in the alternative and the jury verdict forms instructed the jury, erroneously we believe, that if it found liability under plaintiff's tort theory, it could not reach the issue contained in plaintiff's fourth cause of action against General Insurance Company. The reason for this approach was apparently to avoid the possibility of a double recovery, although it is possible that the jury could have found in McAlvain's favor on both theories, i. e., that the insurance agency was negligent in August, 1969, and also that it had bound the insurer, General Insurance Company, in November, 1970. Nevertheless, because of the manner in which these issues were submitted to the jury, and the jury's find-

ing against McAlvain on Count 4 from which he has not appealed, we do not consider issues of liability arising out of the November, 1970, incident. Our sole concern in this appeal is whether an insurance agency which is requested to provide complete coverage and knows or should have known the amount of insurance necessary to effect complete coverage, but thereafter under-insures its insured, can be held liable in tort for its negligence. We think that it can.

■ We must first consider appellant's argument that McAlvain's causes of action must be grounded, if at all, in contract rather than tort. The weight of authority is that the insured may recover under either theory. *Adkins and Ainley, Inc. v. Busada,* 270 A.2d 135 (D.C.App.1970); *Hellbaum v. Burwell & Morford,* 1 Wash. App. 694, 463 P.2d 225 (1969); *Austin v. Fulton Insurance Co.,* 444 P.2d 536 (Alaska 1968); *Anderson Feed & Produce Co. v. Moore,* 66 Wash.2d 237, 401 P.2d 964 (1965); *and see* 3 Couch on Insurance 2d, § 25.32, and 43 Am.Jur.2d, Insurance, § 174. In *Hellbaum, supra,* a case which involved facts similar to this case, a jury award in favor of the insured was affirmed by the Washington Court of Appeals on contract, tort and promissory estoppel theories.

■ A person in the business of selling insurance holds himself out to the public as being experienced and knowledgeable in this complicated and specialized field. The interest of the state that competent persons become insurance agents is demonstrated by the requirement that they be licensed by the state, I.C. § 41–1030; pass an examination administered by the state, I.C. § 41–1038; and meet certain qualifications, I.C. § 41–1034. An insurance agent performs a personal service for his client, in advising him about the kinds and extent of desired coverage and in choosing the appropriate insurance contract for the insured. Ordinarily, an insured will look to his insurance agent, relying, not unreasonably, on his expertise in placing his insurance problems in the agent's hands. *See* discussion in *Riddle-Duckworth, Inc. v. Sullivan,* 253 S.C. 411, 171 S.E.2d 486 (1969). When an insurance agent performs his services negligently, to the insured's injury, he should be held liable for that negligence just as would an attorney, architect, engineer, physician or any other professional who negligently performs personal services.

Our holding in *Taylor v. Herbold,* 94 Idaho 133, 483 P.2d 664 (1971), does not mandate a contrary result. In that case, the wrong complained of was non-performance by the defendant of a contract in which the defendant agreed to buy plaintiff's potatoes and remove them from plaintiff's potato cellar. The plaintiff had attempted to take advantage of the broad damages rules of tort law by arguing that the non-performance of this contract was a tort, but we rejected that argument and limited the plaintiff's remedy to breach of contract. That case did not involve the rendering of personal services by one with specialized knowledge and experience, nor did it involve issues of negligence in the performance of contractual duties.

In *Wallace v. Hartford Fire Insurance Co.,* 31 Idaho 481, 174 P. 1009 (1918), a case in which an insurance agent agreed to obtain insurance coverage for the plaintiff but subsequently failed to do so, this Court affirmed a finding that the insurance company and its agent were liable in tort for the agent's negligence:

> "Where the only relation between the parties is contractual, the liability of one to the other in an action of tort for negligence must be based upon some positive duty, which the law imposes because of the relationship, or because of the negligent manner in which some act which the contract provides for is done." [Quoting 38 Cyc. 426], 31 Idaho at 487, 174 P. at 1010.

The parties in that case apparently did not contend that a contract to insure existed, and the sole issue on appeal was whether the plaintiff could sue in tort.

Adams County Abstract Company argues that our recent decision in *Benner v. Farm Bureau Mutual Insurance Company of Idaho, Inc.,* 96 Idaho 311, 528 P.2d 193 (1974), in which the insured was denied judgment against the insurance agent, requires a reversal in this case. However, the plaintiff's claim in that case was founded in contract, which was found by the trier of fact to exist. Our ruling therein implemented basic principles of agency law: because the contract made by the insurance agent was within the agent's apparent (although not actual) authority, we held that the insurance company was liable to the plaintiffs for their loss. We further held that the agent was not personally liable to the plaintiffs because, since the agent was acting within his authority and did bind the insurance company, he had not subjected himself to contractual liability. *Compare Jernigan v. New Amsterdam Casualty Company,* 74 N.M. 37, 390 P.2d 278 (1964).

The agency principles applicable to this case, unlike *Benner,* relate to the tort liability of an agent. The jury found that Adams County Abstract Company through its employees was negligent in failing to initially procure sufficient insurance in July of 1969 to cover McAlvain's inventory (apparently concluding that the plaintiff himself was not guilty of any negligence, which would have barred recovery). The question of whether the insurer may have been subject to vicarious liability to the plaintiff for its agent's negligence, Restatement 2d, Agency, § 243, § 251, is not before us because McAlvain did not proceed against General Insurance Company under the negligence theory in Count 3. However, an agent can always be held personally liable for his own negligence under ordinary torts principles. Restatement 2d, Agency, § 350, § 401.[1] Thus, Adams

County Abstract Company is liable to McAlvain for damages resulting from its tortious conduct.

Affirmed. Cost to respondents.

McFADDEN, C. J., and DONALDSON, SHEPARD and BISTLINE, JJ., concur.

---

1. Situations may arise when the insurance agent becomes the agent of the insured by agreeing to undertake on the insured's behalf a duty which is apart from and not required by its duties to the insurer. *See, e. g., Adkins & Ainley, Inc. v. Busada,* 270 A.2d 135 (D.C. App.1970) ; *White v. Calley,* 67 N.M. 343, 355 P.2d 280 (1960). If this were the case, liability of the agent to the insured would be predicated on the general rule that an agent is liable to its principal for losses engendered by its breach of duty, Restatement 2d, Agency, § 401, and the insurer would incur no vicarious liability.