725 P.2d 535

**MENDES BROTHERS DAIRY,**
Plaintiff-Respondent,

v.

**FARMERS NATIONAL BANK,**
Defendant-Appellant.

No. 16018.

Court of Appeals of Idaho.

Aug. 29, 1986.

Petition for Review Denied
Oct. 27, 1986.

Richard D. Greenwood, of Stephan, Slavin, Kvanvig & Greenwood and Lloyd J. Walker, Twin Falls, for defendant-appellant.

Harry C. De Haan, VI, and Paul Smith, Twin Falls, for plaintiff-respondent.

SWANSTROM, Judge.

The two Mendes brothers borrowed $45,000 from the Farmers National Bank to start Mendes Brothers Dairy, a partnership. The untimely death of one partner left an unsettled question: Did the bank have the responsibility to obtain a credit life insurance policy covering the loan balance in the event of the death of either brother? After the death of Jose Mendes the partnership sought the policy proceeds, but found that no policy existed. The partnership sued, and the jury found the bank liable for failing to procure the insurance. The bank has appealed from the judgment awarding to the partnership the balance of the loan, costs, and prejudgment interest. We affirm.

In 1983 Jose and Ivo Mendes, recent Portuguese immigrants, brought their families to Idaho to start a dairy. Manuel Silva, a farmer and real estate agent,

helped the Mendeses find a dairy to lease. Since the Mendeses spoke little English, Silva was their interpreter in approaching the bank for a loan. Once the Mendeses provided references, financial statements, a partnership agreement, and a lease, the bank loaned the partnership money to buy dairy cows. After one loan payment was made Jose Mendes was accidentally killed. Ivo, the surviving partner, and Jose's surviving spouse then learned that the partners were not covered by a credit life insurance policy. The partnership sued the bank alleging that the bank had contracted to obtain credit life and had failed to do so. Breach of contract and negligence were alleged. The jury returned a special verdict finding both the existence of a contract and negligence. The jury found that the negligence causing the "damage" was attributable ninety percent to the bank and ten percent to the Mendeses. The bank attacks the jury's finding that a contract existed, the instructions given, and the manner in which questions from the jury were handled by the court.

Whether a contract existed obligating the bank to procure credit life insurance in favor of Jose and Ivo Mendes was the central issue at trial. The testimony on this issue conflicted. Jack Hyder, the bank officer who arranged the loan, testified that he informed the Mendeses of the availability of credit life insurance, but did not remember the Mendeses wanting it. Silva testified that Hyder told him to ask the Mendeses if they wanted credit life. Silva discussed it with the Mendeses and informed Hyder that they did, to which Hyder replied "okay." Hyder testified that if Silva's testimony was correct, then a deal to obtain the insurance was made. Another bank employee closed the loan. Maria Mendes, who spoke English, asked at closing if the check was "covered" and was told that it was. "When the existence of a contract is in issue, and the evidence is conflicting or admits of more than one inference, it is for the jury to decide whether a contract in fact exists." *Johnson v. Allied Stores Corp.,* 106 Idaho 363, 368, 679 P.2d 640, 645 (1984).

The bank argues that there was not the necessary meeting of minds to form a contract. However, the existence of the requisite meeting of minds is part of the factual determination reserved for the jury. *Id.* The jury obviously believed the Mendeses' version of events leading to the formation of the contract to procure credit life insurance. This determination, although close, is based on substantial, albeit conflicting evidence and therefore we will not disturb it. *Challis Irrigation Co. v. State,* 107 Idaho 338, 689 P.2d 230 (Ct.App.1984). The bank did not dispute its failure to obtain the insurance. The undisputed loan balance was placed in evidence. Thus, the existence of the contract, its breach and the resulting damages were established by the evidence.

■ The bank contends that the jury's findings of negligence conflict with the finding that a contract was formed. The bank suggests that if the Mendes brothers were ten percent negligent and the bank ninety percent negligent, as the jury found, there could not be the complete mutual assent for a meeting of the minds. This argument attempts to tie the parties' negligence to the formation of the contract. The actual thrust of the Mendes brothers' negligence claim was that the bank had a duty—apart from contract—to clearly ascertain whether the Mendes brothers desired to have the offered protection of credit life insurance. Some evidence, if believed, tended to show one or more agents of the bank misunderstood or overlooked a request that the loan be covered. Whether the evidence was sufficient under the negligence theory, we do not need to decide. The verdict is supported by substantial and competent evidence on the contract theory.

■ The bank argues generally that the simultaneous presentation of antagonistic contract and tort theories in the instructions and the verdict form mandates reversal. The appellant does not point to any specific instruction, but argues that the instructions blended contract and tort law into a single theory and, taken together,

are erroneous. The bank illustrates the point by drawing our attention to the special verdict form used. The first question asks if there was a contract to procure the insurance. The next question asks if the bank was negligent. Then the form asks for each party's percentage of the negligence. The final question asks for the amount of damages. We note that this form went to the jury essentially as requested by the bank.

We have the benefit in the record on appeal not only of the instructions that were given, but of the arguments made to the jury on the two theories for recovery. It is apparent that the dairy's approach in this case was similar to the plaintiff's approach in *McAlvain v. General Insurance Company of America*, 97 Idaho 777, 554 P.2d 955 (1976). We doubt that the jury was confused. We hold the liability imposed under the contract dispositive. The jury could have stopped there and the result would be the same.

Next the bank asserts error in the giving of a supplemental instruction. During deliberations the jury sent two handwritten notes to the judge. One inquired about the number of votes necessary to find for the plaintiff on the contract claim. The court minutes indicate that the court reconvened and this question was answered. This communication is not challenged on appeal. The other note asked if the jury was to deduct the ten percent comparative negligence of the plaintiff from the damages. The court responded in writing with the following supplemental instruction:

> You should include in your answer to Question Number 4 the total amount of all monetary damages which you find from the evidence was sustained by the plaintiffs. The Court will know what to do with your figure.

■ Appellant first contends that this instruction "directs a verdict" for the plaintiff. We do not agree. The question from the jury asked about verdict question four which addressed damages. Before considering question number four, the jury necessarily found negligence by the bank, negligence by the Mendeses and the percentage of negligence of each, in that order. Only then did the question of whether or not to apportion the damages according to each party's negligence arise. Further, instruction number eighteen, IDJI 900, informs the jury that the judge expresses no opinion as to whether or not the plaintiff is entitled to damages. Although the supplemental instruction could have been phrased better, we find no error in its content.

■ Next, appellant contends the court violated I.R.C.P. 51(b) in giving the instruction. The bank augmented the appeal record with the two handwritten notes from the jury. Concerning the damages question, the record contains only the handwritten question and the supplemental instruction given in response. Rule 51(b), I.R.C.P., states in part:

> Any request by the jury to be further informed of any point of law arising in the action shall be communicated in open court, at which time the attorneys for the parties shall be given the opportunity to be present, and the court in its discretion may further instruct the jury or explain the instructions in open court which shall be made part of the record.

Assuming the record is complete, it is clear that Rule 51(b) was not followed.[1] Respondent argues that both counsel had the opportunity to view the questions, argue to the court, review the supplemental instruction, and object to it, and thus, any error was waived. *State v. Hernandez*, 102 Idaho 349, 630 P.2d 141 (1981). Although these assertions may very well be true, there is no record supporting them. The record discloses *only* the question and instruction. There is no minute entry disclosing that the question from the jury was discussed in open court. *See* I.R.C.P. 77(b). It is not apparent from the record that

---

1. Effective July 1, 1986, Rule 51(b) allows the judge to send written supplemental instructions to the jury. As before, the parties' attorneys are to have the opportunity to be present and to be heard regarding any proposed supplemental instruction.

counsel was even given the opportunity to be present.

■ The procedure utilized when Rule 51(b) has been violated is summarized in *Rueth v. State*, 100 Idaho 203, 209, 596 P.2d 75, 81 (1979).

> To summarize: (1) It is for the losing party, in the first instance, to show that there was some communication off the record and not in open court. (2) The burden then shifts to the winning party to show what the communication was. If he cannot show what it was, the verdict must be set aside. (3) If he can show what the communication was but it appears to have been of such a character that it *may* have affected the jury, then the verdict must be set aside. (4) Only if it is made clearly to appear that the communication *could not have had any effect,* can the verdict be allowed to stand. [Emphasis in original.]

Here, steps one and two are not at issue, and the communication between judge and jury is known. The application of steps three and four involves the determination of whether the error was harmless or prejudicial. *State v. Randolph*, 102 Idaho 153, 627 P.2d 782 (1981). As indicated, we do not believe the instruction influenced the jury to find liability, and appellant does not claim that the instruction was an erroneous statement about which figure to include in the verdict. Accordingly, we conclude that the Rule 51(b) violation did not affect the outcome of the verdict and is therefore harmless.

■ Appellant last contends that prejudgment interest was improperly awarded because the theory upon which damages were calculated was unknown. This argument assumes that there is no supportable contract, and that the damages in negligence cannot be readily ascertainable in advance. However, the jury found the existence of a contract and the damages awarded were based upon that finding. The amount of damages, the outstanding loan, was mathematically ascertainable from the time of Jose Mendes' death and interest was awarded from the time the proceeds were claimed. The dairy was denied the use of the proceeds pending trial and judgment. Thus, we affirm the award of prejudgment interest. *See Davis v. Professional Business Services*, 109 Idaho 810, 712 P.2d 511 (1985).

The judgment in favor of the Mendes Brothers Dairy is affirmed. Costs to respondent. No attorney fees awarded.

WALTERS, C.J., and DONALDSON, J., Pro Tem., concur.