895 P.2d 1195

Eric DUFFIN and Melanie Duffin, husband and wife, Plaintiffs–Appellants–Cross Respondents,

v.

IDAHO CROP IMPROVEMENT ASSOCIATION, an Idaho corporation; State of Idaho, acting by and through the Idaho Department of Agriculture, Federal–State Inspection Service, Defendants–Respondents,

and

CRATER FARMS, INC., an Idaho corporation, Defendant–Respondent–Cross Appellant.

Eric DUFFIN and Melanie Duffin, husband and wife, Plaintiffs–Appellants,

v.

CRATER FARMS, INC., an Idaho corporation, Defendant–Respondent.

Nos. 20135, 20260.

Supreme Court of Idaho, Boise, December 1994 Term.

March 22, 1995.

Rehearing Denied June 22, 1995.

1004

Hepworth, Lezamiz & Hohnhorst, Twin Falls, for appellants Duffin. John C. Hohnhorst argued.

Elam & Burke, P.A., Boise, for respondent Idaho Crop Improvement Association. Bobbi K. Dominick argued.

Racine Olson Nye Cooper & Budge, Chtd., Pocatello, for respondent Crater Farms, Inc. John A. Bailey, Jr. argued.

Quane Smith Howard & Hull, Boise, for respondent Dept. of Agriculture. Phillip J. Collaer argued.

TROUT, Justice.

The action giving rise to this appeal was initiated by the appellants, Eric and Melanie Duffin, and involves the sale of certified seed potatoes.

## I.

## BACKGROUND

The sale of certified seed in Idaho is subject to statutory regulation. The responsibility for administering the certification program is granted to the University of Idaho

(UI). I.C. § 22–425.[1] UI has, pursuant to I.C. § 22–429, delegated the day-to-day management of the program to the Idaho Crop Improvement Association (ICIA), a private, non-profit corporation organized under the Cooperative Marketing Act (I.C. §§ 22–2601 to –2628). ICIA is granted responsibility for conducting the program in accordance with regulations (the Rules of Certification) adopted by UI to govern the certification process. ICIA has also engaged in marketing activities, promoting the purchase of certified seed for the benefit of its members.

The goal of the certification program is to maintain genetic purity of commercial seed and to help ensure that the seed certified is free of the presence of certain diseases and insects within established tolerances. The process for the certification of potato seed entails two visual field inspections, a "winter grow-out" test where seed is taken to California during the winter months and actually planted, an inspection of storage conditions, and a shipping point inspection conducted by the State of Idaho, Department of Agriculture, Federal–State Inspection Service (FSIS).

The Duffins own and operate a farm near Aberdeen, Idaho. Willard Bell, the president and principal shareholder of Crater Farms, Inc. (CFI), approached the Duffins with an offer to sell seed potatoes for the crop year 1988. The Duffins agreed verbally to purchase seed from CFI so long as it was certified. The seed in question was grown on a 270 acre lot as part of CFI's 1987 crop. This lot was designated by ICIA as "lot 87–803" and was listed in the ICIA Grower Directory[2] as being eligible for certification.

In late March of 1988, CFI began delivery of seed to the Duffins. This seed was inspected by the FSIS and found to be within tolerances for the absence of disease. FSIS inspectors, therefore, placed tags on the trucks delivering the seed which designated that seed as "certified." The Duffins finished planting the seed around May 6, 1988.

On April 29, 1988, approximately three weeks after the Duffins received their last load of CFI seed, an FSIS inspector discovered the presence of what proved to be bacterial ring rot (BRR)[3] in one of the remaining seed potatoes from lot 87–803. ICIA notified CFI that no further shipments from the lot could be sold as "certified" seed. At this time, 61,000 cwt. of seed from the lot had already been sold. Neither CFI nor ICIA made an effort to notify the Duffins of the problem.

Potatoes grown by the Duffins from CFI seed were tested and found to be infected with BRR. The Duffins claim the seed was infected when they received it and, as a result, they suffered substantial losses. The losses claimed consist of (1) the excess of the price paid for the seed because it was "certified;" (2) lost revenues which resulted from reduced yields; and (3) lost revenues which resulted from having to sell the crop immediately upon harvest, rather than by way of more lucrative contracts the Duffins had already negotiated, or by waiting until the open market prices were higher.[4]

The Duffins seek to recover damages from CFI for breach of express and implied war-

---

1. The Seed and Plant Certification Act of 1959 (I.C. §§ 22–422 to –433) was repealed in 1990 and replaced by the Seed and Plant Certification Act (I.C. §§ [22–1501] to [–1511]). Since the transaction giving rise to this appeal occurred prior to 1990, all references in this opinion are to the provisions of the Seed and Plant Certification Act of 1959.

2. The ICIA Grower Directory is a listing of all growers of seed that is eligible for certification. The seed identified in the Directory will not become "certified seed" until it has passed all of the inspections required by the Rules of Certification.

3. BRR is listed in the Rules of Certification as a "zero-tolerance" disease. This means that the presence of the disease in any amount disqualifies the entire seed "lot" from eligibility for certification. BRR results in reduced yields and, once potatoes are infected, their storage time is reduced.

4. Based on market prices prevailing at the time when the Duffins would have marketed their crop, they estimate they lost $314,418.80 due to the fact that they had to sell earlier than anticipated.

ranties arising from the contract for the sale of certified seed potatoes, and from ICIA and FSIS for negligence and negligent misrepresentation in the inspection and certification of the seed.

## II.

### PROCEDURAL HISTORY

FSIS moved for summary judgment on the grounds that the Duffins' tort claims notice was untimely and that their claims were barred because the losses claimed were purely economic. The district court concluded that questions of fact remained as to when the Duffins should have known of the existence of their claims, and thus, whether their tort claims notice was timely under the Idaho Tort Claims Act (I.C. §§ 6–901 to –929). However, it concluded that recovery under a negligence theory was barred because the losses claimed were purely economic, and that FSIS was immune from liability for negligent misrepresentation under I.C. § 6–904(3). Therefore, it granted FSIS' motion.

ICIA sought summary judgment on the grounds that the Duffins' losses were economic and that it was an "instrumentality" of the state, immune from liability for misrepresentation under the Idaho Tort Claims Act. The district court concluded that ICIA was an "instrumentality" within the meaning of I.C. § 6–902(1). It also concluded that the Duffins' negligence claim was barred because the damages sought were purely economic. Finally, the court determined that the Duffins' claim for negligent misrepresentation was barred because: (1) I.C. § 6–904(3) prohibits such claims against a state instrumentality; (2) no actionable representation was made by ICIA; and (3) the Duffins could not establish an essential element of the claim (*i.e.* that ICIA knew the Duffins would rely on its representations).

CFI moved for summary judgment on the grounds that the Duffins could not establish that any express or implied warranties had been made or breached, and that certain warranty disclaimers and remedy limitations were valid. The Duffins brought a cross-motion for summary judgment seeking to have the court rule that the disclaimers and remedy limitations were ineffective as a matter of law. The district court ruled that genuine issues of material fact existed as to whether any warranties were created or breached, and whether the warranty disclaimers and limitations of remedy were part of the parties' agreement. It also concluded that it was not possible to rule as a matter of law that either the disclaimers or limitations were ineffective. It therefore denied both motions.

Finally, the Duffins sought leave to amend their complaint to add claims for fraud against CFI and ICIA, and claims for punitive damages on all counts. In ruling on this motion, the district court considered not only whether the allegations advanced supported the claims in the amended complaint, but also whether the claims were supported by the facts in the record. It denied the motion because the facts failed to demonstrate the existence of a claim for fraud, and because there was no evidence of the requisite state of mind to support a claim for punitive damages.

The trial court certified its orders granting summary judgment and denying the motion to amend the pleadings pursuant to I.R.C.P. 54(b). It also granted leave to appeal its order denying the cross-motions for summary judgment under I.A.R. 12.

## III.

### THE ECONOMIC LOSS ISSUE

The first issue is whether the district court erred in its application of the so-called "economic loss rule." ICIA and FSIS both moved for summary judgment on the ground that the Duffins' negligence claims were barred because purely economic loss cannot be recovered in tort. The district court agreed and granted both motions. The Duffins now contend that the district court erred.

In *Clark v. International Harvester Co.,* 99 Idaho 326, 581 P.2d 784 (1978), a case involv-

ing claims for breach of implied and express warranties and for negligence, we addressed "the very narrow question [of] whether the purchaser of a defective product who has ... only suffered economic losses, can recover those losses in a negligence action against the manufacturer." *Id.* at 332–33, 581 P.2d at 790–91. We answered the question in the negative, reasoning that a contrary holding would undermine the comprehensive structure of the Uniform Commercial Code, and that the economic expectations of parties have traditionally not been protected by tort law. *Id.* at 335, 581 P.2d at 793.

In *Just's, Inc. v. Arrington Constr. Co.*, 99 Idaho 462, 583 P.2d 997 (1978), the plaintiff sought to recover economic losses by way of claims for breach of contract and for negligent interference with prospective economic advantage. With regard to the tort claim, we held that economic loss was not recoverable under a negligence theory. The foundation for that holding was that the defendant's conduct did not invade an interest of the plaintiff to which the law of negligence extends its protection. Further, allowing the recovery of economic loss would "impose too heavy and unpredictable a burden on [a] defendant's conduct." *Id.* at 469–70, 583 P.2d at 1004–05.

■ Following *Just's*, this Court has adhered to a general rule prohibiting the recovery of purely economic losses in all negligence actions. *See, e.g., Tusch Enters. v. Coffin*, 113 Idaho 37, 41, 740 P.2d 1022, 1026 (1987) (defending the rule that "purely eco-

nomic losses are not recoverable in negligence"). Based solely on the application of this general rule, the district court's analysis regarding the recovery of economic loss in tort would be correct; ordinarily a party would owe no duty to exercise due care to prevent the type of loss suffered by the Duffins. However, there are exceptions to the general rule of non-recovery.

■ First, economic loss is recoverable in tort as a loss parasitic to an injury to person or property. *E.g., Just's* at 468, 583 P.2d at 1003. We have defined "economic loss" as including "costs of repair and replacement of defective property which is the subject of the transaction, as well as commercial loss for inadequate value and consequent loss of profits or use." *Salmon Rivers Sportsman Camps, Inc. v. Cessna Aircraft Co.*, 97 Idaho 348, 351, 544 P.2d 306, 309 (1975) (citations omitted), *rev'd on other grounds.* Conversely, "property loss" encompasses "damage to property other than that which is the subject of the transaction." *Id. See also Tusch Enterprises v. Coffin*, 113 Idaho 37, 41, 740 P.2d 1022, 1026 (1987); *State v. Mitchell Constr. Co.*, 108 Idaho 335, 336, 699 P.2d 1349, 1350 (1984); *Clark v. International Harvester Co.*, 99 Idaho 326, 332, 581 P.2d 784, 790 (1978). Since the losses claimed here are purely economic, this exception is inapplicable.[5]

■ Economic loss might also be recovered in tort where the occurrence of a unique circumstance requires a different allocation

---

5. In *Oppenheimer Indus., Inc. v. Johnson Cattle Co.*, 112 Idaho 423, 732 P.2d 661 (1986), the plaintiff claimed that negligence on the part of the State Brand Board resulted in the theft of its cattle. This Court took a literal view of the term "property loss" and allowed the plaintiff to recover. In distinguishing *Clark*, the Court held that, "[u]nlike the plaintiff in *Clark*, Oppenheimer is not still in possession of defective goods. Rather, Oppenheimer has suffered the *loss* of its *property* (i.e. the cattle)...." *Id.* at 426, 732 P.2d at 664 (emphasis in original). Thus, "property loss" was equated with a loss of physical possession of one's property, even if that property was the subject of the transaction.
*Oppenheimer* is distinguishable from the facts of this case. The Duffins, like the plaintiff in

*Clark*, remained in possession of the defective or damaged property, that is, the defective seed. It was only the product of that defective seed which they sold and from which they suffered a loss of profits, not property. Although the existence of BRR in the seed may have resulted in a reduced crop yield, terming this loss a "property loss" would be the same as saying that the plaintiff in *Clark* suffered a property loss because the use of his defective tractor also resulted in reduced crop yields. *See also G & M Farms v. Funk Irrigation Co.*, 119 Idaho 514, 527, 808 P.2d 851, 864 (1991) (a reduced crop yield resulting from the use of an inadequate irrigation system is not a property loss).

of the risk. *See Just's* at 470, 583 P.2d at 1005 (citing *Union Oil Co. v. Oppen*, 501 F.2d 558 (9th Cir.1974)). However, the certification of seed potatoes is not a "unique circumstance" requiring a re-allocation of the risk, and the Duffins do not so contend. Therefore, this exception is also not implicated.

■ Finally, an exception to the economic loss rule is applicable in cases involving a "special relationship" between the parties. *Just's* at 470, 583 P.2d at 1005 (citing *McAlvain v. General Ins. Co. of America*, 97 Idaho 777, 554 P.2d 955 (1976)). The Duffins contend that such a relationship exists between themselves and both ICIA and FSIS. With regard to the relationship between the Duffins and ICIA, we agree.

We recognized the existence of a "special relationship" exception to the economic loss rule in *Just's*. However, in that case we were not required to define the parameters of that exception; this is a task we undertake today. We have held that a party generally owes no duty to exercise due care to avoid purely economic loss. *E.g., Clark* at 336, 581 P.2d at 794. The term "special relationship," therefore, refers to those situations where the relationship between the parties is such that it would be equitable to impose such a duty. In other words, there is an extremely limited group of cases where the law of negligence extends its protections to a party's economic interest.

In *McAlvain v. General Ins. Co. of America*, cited by this Court in *Just's*, we held that the relationship between an insurance agent and his insured is such that the agent should be liable when he performs his function negligently to the injury of the insured. 97 Idaho at 780, 554 P.2d at 958. In reaching this conclusion, we emphasized the fact that an insurance agent holds himself out to the public as having expertise regarding a specialized function, and that, by so doing, the agent induces reliance on his superior knowledge and skill. *Id.*

■ Although *McAlvain* dealt with the existence of a professional or quasi-profes-sional relationship, we do not limit the "special relationship" exception exclusively to such cases. ICIA has held itself out as having expertise in the performance of a specialized function; it is the only entity which can certify seed potatoes in the state of Idaho. ICIA knows that seed is sold at a higher price based on the fact that it is certified. Indeed, it has engaged in a marketing campaign, for the benefit of its members, the very purpose of which is to induce reliance by purchasers on the fact that seed has been certified. Under such circumstances, ICIA occupies a special relationship with those whose reliance it has knowingly induced. *See also Glanzer v. Shepard*, 233 N.Y. 236, 135 N.E. 275 (1922) (where public weighers held themselves out as having special skill and undertook the performance of their function with the purpose of shaping the conduct of purchasers of beans, they had a duty to perform their function carefully).

Because a special relationship existed between ICIA and the Duffins, if ICIA was in fact negligent in the performance of its function, it should be liable for any injury proximately caused by that negligence. Therefore, the order of the district court granting ICIA's motion for summary judgment on this issue is reversed.

■ With regard to the FSIS, there is no evidence in the record from which we can conclude that it has actively sought to induce reliance on the part of purchasers of certified seed. Therefore, unlike ICIA, it does not occupy a special relationship vis-a-vis those purchasers. Accordingly, the Duffins' negligence claim against it is precluded because the damages sought are purely economic and there is no applicable exception to the operation of the economic loss rule. The order of the district court granting summary judgment to FSIS on this issue is affirmed.

## IV.

### WHETHER THE DISTRICT COURT ERRED IN CONCLUDING THAT ICIA IS AN "INSTRUMENTALITY" OF THE STATE PROTECTED BY THE IDAHO TORT CLAIMS ACT

ICIA contends that it is subject to the provisions of the Idaho Tort Claims Act (I.C.

§§ 6–901 to –929). Thus, according to ICIA, the Duffins were required to timely file a tort claims notice pursuant to I.C. § 6–905. Furthermore, ICIA is immune from liability for negligent misrepresentation under I.C. § 6–904(3). The district court concluded that "the ICIA looks, acts, walks and talks more like a state agency than a private enterprise." Thus, according to that court, ICIA is an "instrumentality" of the state, covered by the Idaho Tort Claims Act and the Duffins' claim for negligent misrepresentation was barred. However, with regard to the Duffins' negligence claim, the lower court concluded that material questions of fact remained as to whether their tort claims notice was timely.

■ Under the Idaho Tort Claims Act, unless otherwise provided, every "governmental entity" is liable for damages arising out of its negligent or wrongful acts. I.C. § 6–903(a). "Governmental entity" is defined to include the "state," which is in turn defined as "the state of Idaho or any office, department, agency, ... or other instrumentality thereof." I.C. § 6–902(1), (3). There is no question that ICIA is organized as a private entity. Thus, the question posed is whether this private organization is an "instrumentality" of the state within the meaning of I.C. § 6–902(1).

Contrary to the conclusion of the district court, the applicability of the Idaho Tort Claims Act does not turn upon the nature of the act in question and whether it looks "governmental." *Cf. Sterling v. Bloom,* 111 Idaho 211, 231–32, 723 P.2d 755, 775–76 (1986) (rejecting the notion that the existence of discretionary immunity is dependent upon the "traditional governmental" nature of the function being performed); I.C. § 6–903(a) (governmental entities are generally liable for wrongful acts regardless of whether they are performing a governmental or proprietary function). Rather, the focus is on the nexus between the state and the private entity (*i.e.* whether the entity truly operates independently of the state).

In examining the relationship between the ICIA and the state, it is clear that the state does not exercise a great deal of control over the ICIA's day-to-day operations. All but one of ICIA's directors are elected by its members; its day-to-day affairs are managed by an executive secretary employed directly by ICIA's board of directors; ICIA's internal employment decisions are not conducted under state supervision; ICIA receives no appropriations from the state and its revenues do not become part of the state's General Fund;[6] ICIA conducts activities in addition to and separate from its certification program; and ICIA has procured its own liability insurance.

■ In short, the mere fact that ICIA performs a "governmental" activity in conformity with governmental standards is not enough to convert it into a government entity for purposes of the Idaho Tort Claims Act. ICIA is an independent, non-profit organization which simply contracts with a government agency in order to provide services. Thus, the district court erred in finding that ICIA was an instrumentality of the state within the meaning of I.C. § 6–904(3).

V.

**WHETHER THE DISTRICT COURT ERRED IN CONCLUDING THAT ICIA WAS NOT LIABLE FOR NEGLIGENT MISREPRESENTATION**

In addition to their negligence claim, the Duffins have sought to recover from ICIA by way of a claim for negligent misrepresentation. The district court, however, concluded that the negligent misrepresentation claim failed for three reasons. First, because it determined ICIA was covered by the Idaho

---

6. One of the purposes sought to be achieved by the passage of the Idaho Tort Claims Act was the preservation of the public coffers. *Leliefeld v. Johnson,* 104 Idaho 357, 374, 659 P.2d 111, 128 (1983). Because ICIA receives no appropria- tions and does not contribute its revenues to the state, we are not compelled to deem it an "instrumentality" in order to advance at least one of the policies sought to be achieved by the passage of the Act.

Tort Claims Act, ICIA was immune from liability for misrepresentation pursuant to I.C. § 6–904(3). *See Intermountain Constr., Inc. v. City of Ammon,* 122 Idaho 931, 841 P.2d 1082 (1992). Second, no actionable representation was made by ICIA. Finally, the court concluded that the Duffins could not establish that ICIA knew they would rely on its representations. The Duffins argue on appeal that the district court erred in its determinations.

■ We need not reach any of Duffins' arguments, as this Court has strictly limited the cause of action for negligent misrepresentation and it is not viable in this case. In *Hudson v. Cobbs,* 118 Idaho 474, 797 P.2d 1322 (1990), we stated that negligent misrepresentation *as recognized in Idaho Bank & Trust Co. v. First Bancorp of Idaho,* 115 Idaho 1082, 772 P.2d 720 (1989), is a viable cause of action. 118 Idaho at 479, 797 P.2d at 1327 (emphasis added). To further clarify the matter, we expressly hold that, except in the narrow confines of a professional relationship involving an accountant, the tort of negligent misrepresentation is not recognized in Idaho. Accordingly, the Duffins may not maintain a cause of action for negligent misrepresentation against ICIA and the order of the district court dismissing that claim is affirmed.

## VI.

**WHETHER THE DISTRICT COURT ERRED IN DENYING SUMMARY JUDGMENT ON THE ISSUES CONCERNING THE EXISTENCE AND BREACH OF WARRANTIES AND THE VALIDITY OF WARRANTY DISCLAIMERS AND REMEDY LIMITATIONS**

CFI brought a motion for summary judgment asking the district court to rule that no warranties had been made or breached, and that warranty disclaimers and remedy limitations contained in the Rules of Certification, the ICIA Grower Directory, and the tags attached to the loads of seed were valid.

The Duffins brought a cross-motion for summary judgment seeking to have the trial court rule that the disclaimers and remedy limitations were ineffective. The district court concluded that there were genuine questions of fact as to whether any warranties were created or breached and whether the disclaimers and limitations became part of the parties' agreement. It also concluded that it was not possible to rule that the disclaimers and limitations were invalid as a matter of law. Accordingly, it denied both motions for summary judgment. CFI and the Duffins now contend that the trial court erred.

■ When considering an appeal from a ruling on a motion for summary judgment, this Court's standard of review is the same as that used by the district court in passing on the motion. *Curtis v. Firth,* 123 Idaho 598, 610, 850 P.2d 749, 761 (1993). That standard requires the district court, and this Court on appeal, to liberally construe the facts in favor of the non-moving party and determine whether there is a genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c); *Anderson v. City of Pocatello,* 112 Idaho 176, 179, 731 P.2d 171, 174 (1986).

### A. *Existence and Breach of Warranties*

#### 1. *Express Warranty*

Section 28–2–313 of the Idaho Code provides in relevant part:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an

express warranty that the whole of the goods shall conform to the sample or model.

The Rules of Certification define "certification" as meaning "that the potatoes have been inspected ... and found to meet the grade requirements for certified seed *at the time of inspection, based on the sample inspected.*" (emphasis added). Thus, if the only affirmation made was a statement that the seed would be "certified," no express warranty was created that all seed sold was guaranteed free of BRR.

■ However, as Comment 5 to § 28–2–313 states, "[p]ast deliveries may set [a] description of quality, either expressly or impliedly by course of dealing." The parties had dealings prior to the transaction giving rise to this appeal. Thus, although an express affirmation of fact regarding the quality of the seed may not have been made by the mere use of the term "certified," a warranty may have arisen through a "description" of the goods based on prior dealings. Whether such a description was in fact made, and whether it became part of the basis of the bargain, are questions of fact sufficient to preclude summary judgment. *See* Comment 3 to I.C. § 28–2–313. Accordingly, the order of the district court denying summary judgment on this issue is affirmed.

2. *Implied Warranty of Merchantability*

■ Pursuant to I.C. § 28–2–314, unless excluded or modified, a warranty of merchantability is implied in a contract for the sale of goods if the seller is a merchant in the business of selling goods of the kind. CFI clearly fits within the definition of merchant. I.C. § 28–2–104(1). Thus, there is no question that the warranty was made. However, such a warranty is breached, if at all, at the time of sale. *See, e.g.,* James J. White & Robert S. Summers, Uniform Commercial Code § 9–7 (3d ed. 1988) ("White & Summers"). In this case, even assuming that seed infected with BRR is unmerchantable, there remains a factual question relating to whether the seed was infected at the time of

delivery. This question is sufficient to preclude summary judgment on the issue of breach. *Cf. Martineau v. Walker,* 97 Idaho 246, 542 P.2d 1165 (1975) (in action for breach of implied warranties, whether diseased cattle were infected prior to risk of loss passing to buyer is a question for the trier of fact). We, therefore, affirm the order of the district court on this issue as well.

3. *Implied Warranty of Fitness for a Particular Purpose*

Section 28–2–315 of the Idaho Code provides:

Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified ... an implied warranty that the goods shall be fit for such purpose.

■ In this case the record shows that Eric Duffin was knowledgeable about potato seed. However, there is absolutely no evidence that the Duffins relied on CFI's judgment in selecting appropriate goods for a particular purpose. In fact, Eric Duffin admitted in his deposition, that he did not seek CFI's advice with regard to the seed in question. Further, it is undisputed that the Duffins specifically requested certified seed. As Comment 5 to I.C. § 28–2–315 explains, where the buyer himself insists on a particular brand or type of goods, he is not relying on the seller's skill and judgment and no warranty arises. Since there is no evidence of reliance in the record, the order of the district court denying summary judgment on this issue is reversed.

B. *Validity of Warranty Disclaimers and Remedy Limitations*

The Rules of Certification state that "[c]ertification does not constitute a warranty of the [ICIA], or the grower of certified seed regarding any characteristic of the seed...." The ICIA Grower Directory contains similar

language purporting to disclaim all warranties, as do the tags attached to the loads of seed at the time of delivery to the purchaser. Printed on the certification tags is also a provision claiming to limit the purchaser's remedy to "a return of the purchase price of the seed."

■■■ It is fundamental that to be effective, disclaimers of warranties and remedy limitations must be part of the bargain struck by the parties. *See generally* White & Summers § 12–1. As a threshold matter, CFI's contention that disclaimers printed in the Rules of Certification and the ICIA Grower Directory *ipso facto* became a term of an agreement between a buyer and seller is meritless. Therefore, our focus is on the certification tags which actually purport to insert terms into the agreement between the buyer and seller. These tags state that "[b]y acceptance of these seed potatoes, buyer expressly agrees that the disclaimer of warranty and limitation of remedy ... are express conditions of the sale."

■■■ In this case, the contract was formed when Duffin accepted CFI's offer to sell. CFI's principal admitted that the parties did not discuss any warranty disclaimers or remedy limitations. Therefore, the provisions drafted by ICIA and printed on the certification tags simply could not become a term of the contract; not only were they unilaterally interjected after the contract had been formed,[7] they were interjected by a stranger to the contract. There is, however, a question of fact as to whether terms disclaiming warranties or limiting remedies became part of the agreement through a course of dealing or trade usage.

■■■ With regard to the disclaimer of implied warranties,[8] I.C. § 28–2–316(3)(c) provides that an implied warranty can be excluded by course of dealing, course of performance, or usage of trade. *See also Tolmie Farms, Inc. v. Stauffer Chem. Co.,* 124 Idaho 607, 612, 862 P.2d 299, 304 (1993). There is evidence that the parties had prior dealings, were familiar with the Rules of Certification and the Grower Directory, and had previously used the certification tags. However, whether there is a trade usage disclaiming warranties, or whether the parties adopted such a term as part of their understood course of dealing, are factual questions. *See* I.C. § 28–1–205(1) and (2).

With regard to the limitation of remedy, I.C. § 28–2–719(1) provides:

(a) the *agreement* may provide for remedies in addition to or in substitution for those provided in this chapter and may limit or alter the measure of damages recoverable under this chapter, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts.... (emphasis added)

I.C. § 28–1–201(3) defines "agreement" as "the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance." Thus, since a remedy limitation is effective only as a term of the parties' agreement, the question also arises as to whether there is an applicable course of dealing or trade usage limiting remedies. As stated above, these are factual questions.

In sum, because factual questions remain as to whether there were any terms in the parties' agreement excluding warranties or limiting remedies, the district court's order

---

7. Although a modification of a contract under Article 2 of the Uniform Commercial Code needs no consideration to be binding, I.C. § 28–2–209 (the provision governing modifications) contemplates an "agreement" modifying a contract. Thus, a seller's unilateral attempts at modification are ineffective because, in such cases, the buyer has "agreed" to nothing.

8. With regard to the disclaimer of express warranties, I.C. § 28–2–316 provides:

Words or conduct relevant to the creation of an express warranty and words or conduct

tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this chapter on parol or extrinsic evidence (section 28–2–202) negation or limitation is inoperative to the extent that such construction is unreasonable.

In light of this language, express warranties are virtually impossible to disclaim under the Code. Therefore, if an express warranty was made in this case, it probably was not disclaimed.

denying summary judgment on this issue is affirmed.

## VII.

## WHETHER THE DISTRICT COURT ERRED IN DENYING THE DUFFINS' MOTION FOR LEAVE TO AMEND THEIR PLEADINGS

The Duffins sought leave to amend their pleadings to add claims for fraud against ICIA and CFI. They also sought to add claims for punitive damages. The district court denied the motion on the basis that the facts in the record failed to support the existence of the Duffins' claims. With regard to the claims for fraud, the court determined that the key issue was whether there was a duty on the part of CFI or ICIA to disclose the discovery of BRR. It concluded there was not. With regard to the claims for punitive damages, the trial court concluded that there was no evidence of the requisite state of mind to support such an award.

■ As we have held, "[a]lthough leave to amend is to be freely given, I.R.C.P. 15(a),[9] the decision to grant or refuse permission to amend is left to the sound discretion of the trial court." *Jones v. Watson,* 98 Idaho 606, 610, 570 P.2d 284, 288 (1977) (citations omitted). Further, "[i]n determining whether an amended complaint should be allowed, where leave of the court is required under Rule 15(a), the court may consider whether the new claims proposed to be inserted ... state a valid claim." *Black Canyon Racquetball Club, Inc. v. Idaho First Nat'l Bank,* 119 Idaho 171, 175, 804 P.2d 900, 904 (1991) (citing *Bissett v. State,* 111 Idaho 865, 727 P.2d 1293 (Ct.App.1986)). However, it is generally inappropriate to consider the substantive merits of the claim sought to be added when passing on a motion to amend. *See generally* 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1487 (2d ed. 1990). Thus, the initial question concerns the propriety of the procedure utilized by the district court in ruling on the Duffins' motion.

As stated above, the trial court found it appropriate to measure the proposed amended complaint against the facts disclosed in the record rather than solely against the allegations advanced by the moving party. Because it determined that the facts failed to support the existence of the claims sought to be added, the court denied the motion to amend. We hold that the district court erred in considering the sufficiency of the evidence supporting the proposed claims. This is a determination more properly made in the context of a ruling on a motion for summary judgment. *E.g., WIXT Television, Inc. v. Meredith Corp.,* 506 F.Supp. 1003, 1010 (N.D.N.Y.1980). Having concluded that the lower court erred in its mode of analysis, we nonetheless affirm the order denying leave to amend on the ground that the allegations in the proposed amended complaint fail to support the claims asserted.

■ The Duffins made no allegations which, if proven, would entitle them to recover for fraud. This claim was predicated on the fact that ICIA and CFI had represented that the seed was "certified." The Duffins alleged that the subsequent discovery of BRR rendered this representation false and misleading, thereby giving rise to a duty to disclose. As stated in our discussion concerning the existence of an express warranty, "certification" means the potatoes have been inspected and found to meet the requirements for certification at the time of inspection. Thus, the subsequent discovery of that disease did not render the representations that the seed sold to the Duffins was "certified" false or misleading. Since there are no allegations that CFI seed was not found to meet the requirements for certification prior to the sale to the Duffins, the order of the district court denying leave to amend was ultimately correct.

■ With regard to punitive damages, I.C. § 6–1604(1) provides that to recover such damages, a claimant must prove the existence of oppressive, fraudulent, wanton, malicious, or outrageous conduct by the par-

**9.** Idaho Rule of Civil Procedure 15(a) provides in relevant part:
A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served.... Otherwise a party may amend the pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

ty against whom the claim is asserted. Other than the allegation that CFI and ICIA failed to disclose the discovery of BRR, there are no allegations that either CFI or ICIA engaged in any outrageous conduct. As a matter of law, the failure to disclose a subsequently discovered fact, absent a duty to do so, is not such conduct that would support an award of punitive damages under I.C. § 6–1604. We therefore affirm the order of the district court denying the Duffins' motion for leave to amend their complaint.

## VIII.

### CONCLUSION

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. No attorney fees on appeal. Costs to appellants.

McDEVITT, C.J., JOHNSON and SILAK, JJ., and SCHILLING, J., Pro Tem., concur.